GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. C. JANERT.

Decided January 29, 1908.

**1.—Master and Servant—Negligence—Evidence.**

In a suit by an employee for personal injuries received while assisting in moving an engine upon a turntable, evidence considered, and held sufficient to support a finding by the jury that plaintiff's injury was due to defendant's negligence; that plaintiff was free from contributory negligence, and did not assume the risk of injury from the employment.

**2.—Conditional Admission of Testimony—Practice.**

Where testimony has been conditionally admitted upon the promise of counsel that other evidence will be thereafter introduced to show its competency, and no exception is taken to such action of the court, and the objection to the testimony is not thereafter renewed or the court requested to strike out the same upon failure to introduce the promised evidence, an assignment of error based upon the action of the court, cannot be sustained.

**3.—Personal Injuries—Witness—Impeachment—Secondary Evidence.**

Where, in a suit for personal injuries, an attending physician testified for defendant that he had not given to a benefit society certain certificates that the plaintiff was disabled from work, and that he was not in fact disabled to that extent, secondary evidence, the original certificates being lost, was admissible for the purpose of contradicting the witness. Evidence considered, and held sufficient to establish the execution of the certificates.

**4.—Evidence—Objection—Practice.**

Where testimony is in part admissible, an objection which goes to the whole of it, though good as to part, is properly overruled.

**5.—Assignment of Error—Proposition—Multifariousness.**

Where a "proposition" under an assignment of error contains several distinct points or propositions, and the precise point intended to be reviewed cannot be ascertained from the subjoined "statement," the assignment will not be considered.

Appeal from the District Court of Bexar County. Tried below before Hon. A. W. Seeligson.

*Baker, Botts Parker & Garwood, Newton & Ward* and *W. B. Teagarden,* for appellant.

*J. R. Norton* and *James Routledge,* for appellee.

JAMES, CHIEF JUSTICE.—Janert alleged that he was a wiper in appellant's roundhouse and the work being done was to remove a dead engine from its place in the roundhouse to the turntable and from there to the main track. That in doing so the foreman or-

dered a rope to be attached to the rear end of a live engine on the
main track, and then pass it through a snatch-block and then at-
tach it to the rear end of the dead engine which would be drawn
out by the live engine moving forward.  That when the dead engine
was thus moved to the turntable, the turntable on this occasion
moved, so that the rope came in contact with a wooden lever or
handle of the turntable and broke it, throwing same upon plaintiff
and injuring him.   That plaintiff was inexperienced in moving the
engine in that manner, or any other manner, all of which was dan-
gerous.   The negligence alleged was, first, Failing to warn plaintiff
of the danger; second, That the lever was brittle and insufficient to
be used in such work; third, In failing to have said rope free and
clear of the lever before moving the turntable; fourth, That plaintiff
had just blocked the dead engine in its place on the turntable, under·
instructions of the foreman, and was standing waiting to take the
rope off the snatch-block when ordered to do so by the foreman, and
that the turntable was moved under the direction of the foreman,
who was present and directing the work, and the turntable was
caused to be moved by the pull of the live engine on the rope, by
direction of the foreman, etc.; and that defendant well knew the
work was extraordinarily dangerous and that plaintiff was inexpe-
rienced in such work and that its failure to warn plaintiff of the
danger incident to said work would expose him to unusual danger,
and well knew that to cause the turntable to be operated with said
defective lever was dangerous and that to cause it to be moved while
said rope was stretched between the two engines through the snatch-
block and to cause the rope to come in contact with said lever, would
cause injury to its employes, etc., and that plaintiff, while in the
discharge of his duty and without negligence on his part, was injured
solely through the negligence of the defendant.

The answer was general and special demurrers, and denial, and
pleas of assumed risk, contributory negligence, and fellow servant.
Plaintiff recovered verdict for $4000.

There was testimony as follows:  The work being done was the
moving of a dead engine from its stall in the roundhouse to the
main track.   A rope two inches thick was fastened to the coupler of
said engine, the stall being north of the turntable, and this rope
was extended to a snatch-block, which was fixed southeast and about
ten or twelve feet from the turntable, and from this the rope ex-
tended to, and was fastened to a live engine on the main track west
of the turntable.   This live engine was used to draw on the rope
which brought the dead engine to the turntable.   The turntable was
about sixty feet in diameter and the engine and tender about forty
feet long.   Until the dead engine was fully upon the turntable and
balanced, the table could not move.  When it reached this position
plaintiff, as ordered by the foreman and in the performance of his
duty, went upon the table and blocked the engine so that it would
be stationary.   Plaintiff's position was at the snatch-block.   He
stated:  "I had to take the rope from the dead engine out of the
snatch-block when I had blocked the locomotive.   The live engine
would have to be first backed when I had to take this rope out."

Plaintiff testified that the foreman "told him that as soon as the engine was on the center of the table to block it. The other orders were to take the rope out (of the snatch-block) and then wait on the further orders of the foreman." "I stayed at the snatch-block until I went on the turntable to block the engine so as to prevent it from moving forward or backward. I blocked it under the orders of Keefe, the foreman. I had to take the rope out of the snatch-block when I had blocked the locomotive. The live engine would first have to be backed when I had to take the rope out. After I blocked the engine I went on through and waited for further orders from the foreman. I went under the rope and stood about eight feet or so from the snatch-block west of it. I was facing northwest, looking at the foreman for orders to take the rope out of the snatch-block, and while I was standing there in that position, looking toward the foreman, I saw the foreman raise his hand to give the order to go ahead, to drive on forward; the signal he gave means to move on. The foreman was then looking in the direction of the live engine. This engine then went on and the turntable turned and the lever handle (of the turntable) broke, and I received the blow. This was the lever on the south side of the turntable. I was standing about eight feet from the lever at the time. The lever broke because the rope was drawn against it. When the dead engine was blocked it stood about four feet from the south end of the turntable."

According to the testimony of plaintiff, his orders contemplated that after the engine was upon the turntable it should be blocked and the rope released from the snatch-block, and the turning of the table was to be done by hand. There was testimony that several men were stationed at the lever handle on the north side of the turntable. Besides this, Keefe, by his testimony, shows that it was his intention to so move the table in that way. He testified that he desired to pull it (the dead engine) on the turntable sufficiently to turn the table by hand. Mr. Keefe does not deny this, but his version of the occurrence was as follows:

"The lever, before it came in contact with the rope that broke, had gone about ten feet. The lever was moving very slowly. The rope was about two feet or two and a half feet above the ground. The rope was behind Janert. He could not see the rope from the position he held. The rope had been stretched before Janert took hold and he knew it was there." The reason I say he knew it was there, he assisted in coupling the rope to both engines, the one dead and the one live; he had to swing the rope around this way through the pulley and assist in that work. When he took the position he was about six or eight feet from the rope. When the turntable started to swing I hollered to him to get out of the way, and also mentioned to him to turn loose of the turntable and get out of the way; and motioned with both hands to turn it loose; he was looking directly at me and I would judge that he saw me, because he was looking directly at me and made a motion as though to hold the turntable, or an effort to hold it, I would say. The rope was then five or six feet from him. The rope caught his leg. He continued to hold the stake of the turntable—the pole that we have there—

pole, we call it—he continued to hold to it, and I motioned the hostler that was handling the live engine to stop, and by the time the rope had caught him the turntable had slowed up and was pretty near stopped, and the stake broke off. I signalled before he was caught, but the dead engine was already moving, and moving from its own momentum, did not stop at once. I gave the signal to the man in charge of the power of the engine to stop just as the dead engine came on to the turntable. Janert was then at least five feet from it. I signalled to the engineer to stop the engine before I signalled to Janert to get out of the way. Just the minute the engine dropped on to the turntable, I signalled to him to block, but, of course, it took a little time for him to get the live engine to stop. The man in charge acted as promptly as possible. The turntable started to move, and I gave him the signal to stop. It wouldn't be a minute, it was probably two seconds. The pole broke. I went to Janert immediately."

In fine, his testimony was that all the signals he gave the engineer after the engine first reached the turntable were stop signals; that the instant the engine was upon the turntable when it was possible for the table to move, it moved while the engineer was stopping his engine in obedience to his signals. This reason is radically different from Janert's, as above stated. Janert was corroborated in the fact that the dead engine stopped while he was blocking it, by testimony of Hartman, who stated: "It is a fact that as quick as the engine got on the table—all of the engine—the last wheel of the engine—that it stopped." Janert's statement about Keefe giving the go-ahead signal was likewise corroborated by testimony given by Hartman as follows: "I was giving signals—taking signals of Mr. Keefe and giving them to the hostler (the man operating the engine)." Question. "Well, when the dead engine had gone on the turntable, what signal, if any, did the foreman or Mr. Keefe give you?" Ans. "Well, he was giving me the signal to keep going on with the live engine, the signal he gave me. I kept repeating it to the hostler; he was moving the live engine." Question. "Well, while this was going on, I will ask you whether or not anything happened around there, or around the turntable?" Ans. "Why, the pole of the turntable broke." It is true this witness had made a report in which he stated differently, and in his cross-examination and re-examination his testimony on the subject was inconsistent. But the jury, in our opinion, were authorized to find that it was a go-ahead signal, and not a stop signal, that the foreman gave when the engine was balanced on the turntable, both from the testimony, and in connection with the fact that the table was swung around with such force as to instantly shatter the lever handle, which was a piece of wood eight feet long and eight inches square. This fact might be taken as incompatible with testimony that slow signals had been given, and that when the pole broke the engine was in the act of slowing up.

Hartman testified: "Mr. Keefe had not been moving engines in this new manner, with a live engine, very long. He was the man who introduced it." Janert testified in substance that in the old style when the engine got on the turntable it was turned by hand

power. "During the time they had been moving dead engines with live ones I helped with two or three. It had been about a year. We were not taking many out as this one was. I helped sometimes, and sometimes not. I was not aware of any danger in moving a dead engine with a live one. I did not know that the rope would push against the lever and break it." Keefe testified, "We have had engines to take a strain on the rope similar to that before. I don't believe it ever broke the levers before; we have pulled engines out in similar manner before, and had the table move in the same manner before, but never happened to break the lever before. This was a pine wood lever and appeared to me to be brittle."

The above testimony, upon plaintiff's theory of the case and in view of the verdict, would show that plaintiff had no expectation that the live engine would be moved after the dead engine was blocked on the turntable, at which time the live engine had practically stopped, but on the contrary that no further power would be applied by the live engine, that the rope would be released from the snatch-block and the table turned by hand power. He was at his proper place looking to the foreman for the order to release the rope from the snatch-block when, instead of an order to back up the engine to slack the rope, the foreman gave the order to move forward, which immediately moved the turntable toward the east and brought the lever handle of the turntable in contact with the rope, breaking the handle and injuring plaintiff where he stood.

It seems to us that in these facts there was authority for the jury to find that plaintiff's injury was due to a negligent act of the foreman (who was shown to be defendant's vice-principal); also that plaintiff was free from contributory negligence and from the charge of assumed risk, consequently the first and second assignments of error are overruled.

Appellant's fourth assignment of error complains in reference to testimony of Ecknarf, secretary of a Sons of Hermann Lodge, to which plaintiff belonged. Five assignments of error are grouped in appellant's brief as the fourth assignment of error. Only one proposition is made under them and it is as follows:

"The testimony of witness Louis Ecknarf complained of in these assignments of error was hearsay, irrelevant and immaterial to any issue in the cause; the court erred in its admission and erred in refusing to withdraw said testimony from the jury and to instruct the jury not to consider the same, as requested by defendant."

To dispose of this proposition it will only be necessary to condense the statement made in appellant's brief of the proceedings. Plaintiff's counsel asked Ecknarf this question: "During October, November and December, 1903, did he (Janert) or did he not make any application to that society for sick benefits?" An objection was interposed to this which the court sustained. Then plaintiff's counsel asked this question: "In said months I wish to ask you whether or not Dr. Goeth did or did not make any certificate to your Society in regard to the condition of Mr. Janert?" This was objected to because the certificate would be the best evidence of itself. The court said: "The question is, did he make such a cer-

tificate? I will overrule the objection." Defendant excepted. Later the court held, "I am going to let him state how many certificates he made," to which defendant excepted. The witness testified that Dr. Goeth made six; that they were in writing; that he kept them a certain length of time, about a year, and destroyed them; that they didn't keep them any longer than that. Then plaintiff's counsel asked this question: "Now, what was the effect of that certificate? What was the statement contained in it by Dr. Goeth?" This was objected to as irrelevant, immaterial and self-serving. Objection overruled and defendant excepted. Question. "What did Dr. Goeth say in the certificate in regard to Mr. Janert's condition?" Answer. "Well, the doctor's certificate must show that the man is sick and unable to work. There were about six of them, I think."

After cross-examination of this witness, counsel for defendant asked to have the jury instructed to disregard all of the testimony of this witness relating to plaintiff's being a member of this Society, and making application for and recovering sick benefits, upon the ground that the whole of the testimony is irrelevant, immaterial and constitutes self-serving declarations of a highly prejudicial character to defendant, and those third party acts are not binding on defendant. The court held the objection good and instructed the jury to consider none of the testimony of the witness.

Thereupon counsel for plaintiff protested: "If your Honor please, this testimony is very important. Dr. Goeth admitted having made and delivered two of these certificates. Now, then, he stated that he did not say in these certificates that this man was disabled from work. The witness testified that he received six or seven of these certificates and that they did state that the man was unable to work. That contradicts Dr. Goeth's own testimony. Why, it is necessary for the purpose of contradicting Dr. Goeth."

The court then said: "The only trouble is you can not show by this witness the contents of the certificate supposed to have been made by Dr. Goeth, unless this witness himself knows Dr. Goeth made the certificate—that is elementary. If you show that this witness known that Dr. Goeth made the certificates then this testimony is admissible."

Counsel: "Dr. Goeth admits having made two of these certificates."

The court: "Not these certificates."

Counsel: "Yes, sir."

The court: "This witness does not know who signed this certificate."

Counsel: "We will show by other witnesses that no other doctor made any certificates, and we ask that your Honor withhold your ruling until we show by other witnesses that these same certificates were made by Dr. Goeth, and that no other certificates were made except the ones made by Dr. Goeth. The fact that the witness does not remember who it was signed it—he knows the certificates were there and the contents of them—and the fact that he does not remember them, we will supply that by other testimony, as well as Dr. Goeth's own admission; we have a right to offer that testimony;

this testimony should not be excluded at this stage of this case. If your Honor concludes later it should be excluded, then it would be right and proper, but we have a right to have it until we offer the other testimony."

The court: "The proof shows up to this time that this witness has destroyed those certificates. You have the right to offer secondary evidence. Well, I will leave it in temporarily, and give you an opportunity to supply the proof."

Counsel: "The jury is instructed, then, that the testimony is in for the present?"

The court: "Yes, sir."

Counsel: "Your Honor understands, we have no objection to that being excluded, that he received benefits—that was brought out by Mr. Ward, and we have no objection to its being excluded."

The court did not thereafter exclude the testimony.

This is in substance all that appellant presents to support the assignments. It will be seen that the last action taken by the trial judge in the matter was to allow the testimony to remain in for the present. No exception was reserved to this by appellant. It appears to us that if plaintiff afterwards failed to supply the proof indicated, the objection ought to have been renewed and exception taken.

However, plaintiff did supply the proof, and it may be this was the reason that the court took no further action, and defendant did not renew the objection. Dr. Goeth had testified that he gave two certificates, and in them he did not state that plaintiff was disabled from work; that the statement was that Janert said he was disabled. The certificates he gave, if they stated that Janert was disabled from work, were clearly admissible to contradict and discredit the witness. It was shown by the secretary that all the certificates the lodge received had, in due course, been destroyed. It was therefore proper to show their contents by secondary evidence. It seems that the secretary was unable to say that said certificates had been signed by Dr. Goeth, nor could he say what they stated except inferentially that to obtain benefits it was necessary that they should have shown that he was disabled from work. Thus stood the matter when the court said the evidence should remain in for the present to give plaintiff the opportunity of supplying the necessary proof. Afterwards, Mrs. Janert testified that Dr. Goeth in November and December, 1903, made out four certificates, which he filled out by writing in the blanks; that she only read the writing of the doctor therein, which stated that Janert was injured in the knee and incapable of work. That these certificates were given to some member who went to the meeting, and the testimony showed that promptly after the meeting the benefits were paid.

We conclude that as to four of the certificates, they were shown to have been given by Dr. Goeth, and that they stated that Janert was unable to work. This evidence was proper, not as substantive proof that plaintiff was injured, but to impeach or discredit Dr. Goeth, who testified for defendant that plaintiff was not injured in the knee. Appellant's objections went to the whole of Ecknarf's tes-

timony, and were directed to all six certificates. If his testimony was admissible in respect to several of the certificates, and the objections proved not to be valid as to several of them, the court would have committed no error in overruling the objection in its entirety. St. Louis, I. M. & S. Ry. Co. v. Gunter, 39 Texas Civ. App., 129; Tuttle v. Moody, 100 Texas, 240.

The assignments of error from five to fifteen inclusive all relate to objections to testimony. The assignments are not propositions in themselves. Under each, however, there is what purports to be a proposition, and each one contravenes the requirement that it state a definite proposition. For example, under the fifth this is the proposition: "The testimony of Mrs. Janert that the certificates made out by Dr. Goeth were sent to the Lodge of Hermann Sons, was hearsay, and the fact constituted a self-serving declaration." That under the seventh reads: "The testimony sought to be elicited was irrelevant and immaterial, and called for the conclusion of the witness, and (the question) was also leading." After the proposition there is nothing presented in the brief but a statement from the evidence. We are unable to consider each and every proposition embodied in the "proposition," both because of the rule and, if we should waive the rule, then because of the excessive and perhaps useless labor it would involve to investigate and discuss each subject mentioned in the "proposition" in connection with the evidence in the statement. If there was only one of these assignments in this condition, we would feel inclined to waive the rule, but certainly it would be asking too much of us to take, say the seventh assignment, and discuss the evidence from the view of its alleged irrelevancy and immateriality, also from the view of its being a conclusion, and also whether the question eliciting it was leading. Under none of these assignments is there anything to inform us that appellant relies on some one point involved in the "proposition." They are all clearly multifarious and not entitled to be considered. Barrett v. Ind. Tel. Co., 65 S. W. Rep., 1128.

From the sixteenth assignment it appears that plaintiff's counsel in the closing argument stated to the jury that the lodge to which plaintiff belonged—that is, the Sons of Hermann—would not pay out money to its members unless they were disabled from performing any labor, and that the plaintiff was disabled, as shown by the certificates made by Dr. Goeth, or the lodge would not have paid him the benefits which had been paid to him.

To the above defendant objected because not supported by the testimony, and was improper argument to the jury and prejudicial to the defendant, and asked that the jury be instructed to disregard it, which the court refused to do, to which defendant took exception, the bill being qualified by the judge thus: "That after the objection was made to the above remarks, the counsel who made the remarks then stated to the jury, that 'if such remarks were not supported by the testimony I ask you not to consider it and withdraw the remarks.'" The only objection made to the language of counsel was that it was not supported by the testimony. Ecknarf testified that "the doctor's certificate must show that the man is sick and

unable to work." Mrs. Janert's testimony showed that four of the certificates given by Dr. Goeth stated that Janert was incapable of work. The argument was not subject to the objection made to it.

The damages allowed by the jury are not excessive.

*Affirmed.*

Writ of error refused.