### BRADLEY v. TEXAS & P. RY. CO. *
(No. 865–4961.)

Commission of Appeals of Texas, Section B.
Jan. 25, 1928.

**1. New Trial ☞143(1)—Jurors' verdict cannot be impeached by examination showing that one or more of them misunderstood, misapplied, or disobeyed court's charge (Rev. St. 1925, art. 2234).**

Under Rev. St. 1925, art. 2234, authorizing court to hear testimony of jurors where ground of motion for new trial is jury's misconduct, verdict cannot be impeached by examination to show that one or more of the jurors misunderstood, misapplied, or disobeyed the court's charge, unless there is evidence of an overt act of misconduct.

**2. New trial ☞143(1)—Trial courts should not permit inquiry into mental processes of juror in reaching verdict, unless to show effect of overt act of misconduct.**

Trial courts should not permit inquiry into the mental processes of a juror in reaching his verdict, unless such inquiry is necessary to determine the effect of a juror's mind of some proven overt act of misconduct.

**3. Witnesses ☞397—Proof of witness' inconsistent statement may be considered only for impeaching purposes, and not as substantive evidence.**

Proof of inconsistent statement of a witness may be introduced and considered only for impeachment purposes, and not as substantive evidence of the truth of the matters stated.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 7, 1928.

**4. New trial ⚖145—Where juror testified that misconduct did not influence his verdict, proof of inconsistent statements held not substantive evidence to contrary.**

Where juror, in personal injury case, testified on motion for new trial that misconduct of juryman in mentioning attorney's fees did not influence his verdict, proof of inconsistent statements *held* no substantive evidence that the misconduct did influence his verdict.

**5. New trial ⚖44(2)—Where juror's improper mention of attorney's fees was followed by another juror's admonition that they were not to be considered, denying new trial held not abuse of discretion, in absence of evidence that misconduct influenced verdict.**

On motion for new trial, where the only evidence of misconduct was that juror mentioned attorney's fees and the jury immediately admonished by another juror that under the court's charge it was improper to consider attorney's fees, and there was no evidence that verdict was affected by such misconduct, denial of new trial *held* not abuse of trial court's discretion.

**6. New trial ⚖159—Where juror's testimony as to effect of misconduct was contradictory, judge could disregard all his testimony on motion for new trial.**

Where juror's testimony, on motion for new trial, that he was not affected by misconduct in jury room, was impeached by contradictory statements, the judge could disregard all the juror's testimony in determining whether a new trial should be granted.

**7. New trial ⚖159—Trial judge has same latitude on motion for new trial in passing on witness' credibility as jury has on original trial.**

On motion for new trial, the trial court has the same latitude in passing on the evidence offered as to the credibility of a witness and the weight to be given his testimony as a jury has on the original trial.

**8. New trial ⚖159—Since jury may disbelieve all testimony of contradicted witness, trial court has same privilege in hearing testimony on motion for new trial.**

Since, where a witness is impeached as to a material portion of his testimony, the jury may disbelieve all his testimony, the trial court in hearing testimony on a motion for new trial has exactly the same privilege.

**9. Appeal and error ⚖882(20)—Appellant who impeached own witness cannot complain, if trial court, on motion for new trial, disbelieves all his testimony.**

Appellant, who offered evidence tending to impeach his own witness, on motion for new trial, as to a portion of the witness' testimony, cannot complain, if the trial court disbelieved the witness' entire testimony.

**10. Appeal and error ⚖933(5)—On appeal from denial of new trial for juror's misconduct, appellate court must take most favorable view of evidence which trial court could take.**

On appeal from denial of motion for new trial, on the ground that there was misconduct of a juror, the appellate court must take the most favorable view of evidence produced as the trial court was authorized to take.

**11. Appeal and error ⚖933(5)—Where portion of juror's testimony was impeached, appellate court presumed trial court disbelieved his testimony of misconduct.**

On appeal from denial of motion for new trial, where a portion of juror's testimony was impeached, the appellate court presumed that the trial court disbelieved his testimony as to juror's misconduct.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by De Witt Bradley against the Texas & Pacific Railway Company. To review a judgment of the Court of Civil Appeals (298 S. W. 149), reversing and remanding a judgment for plaintiff, plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.

Rowell & Rowell, of Jefferson, and Jones & Jones, of Marshall, for plaintiff in error.

Bibb & Caven, of Marshall, J. H. Benefield, of Jefferson (T. D. Gresham and R. S. Shapard, both of Dallas, of counsel), for defendant in error.

LEDDY, J. The honorable Court of Civil Appeals (298 S. W. 149) reversed and remanded a judgment which awarded plaintiff in error damages for personal injuries, sustained by reason of the negligence of the defendant in error. The sole ground of the reversal was alleged misconduct of the jury, based upon the fact that one or more of the jurors considered and included attorney's fees in arriving at the amount of damages assessed by the verdict.

Six of the jurors testified on the hearing of the motion for new trial. Two were not interrogated and gave no testimony on this issue. Three others testified that they heard no mention of attorney's fees. It is upon the testimony of the jurors Bramlette and Jaynes that the insistance is made that such misconduct was shown as required the reversal ordered by the Court of Civil Appeals.

The trial court in its charge specifically instructed the jury not to discuss or consider the question of attorney's fees in their deliberation. The juror Jaynes testified that he did not hear any discussion or mention of attorney's fees while the jury was deliberating Notwithstanding this fact, the defendant in error inquired into the secret mental processes operating in the juror's mind during his deliberation and he was permitted to testify, in effect, that he disregarded the charge of the court with reference to the consideration of attorney's fees. On this subject he testified:

"Q. Now, in the consideration of your verdict in this case, did you take into considera-

tion in your own mind that the attorney might get some part of the verdict? A. As far as taking it into consideration in my own mind, that was unavoidable.

"Q. Well, you did consider it in your own mind? A. Yes, sir; a fellow would have to.

"Q. That would naturally cause you to give a larger amount to take care of it? A. Yes, sir.

"Q. And it did in this case, didn't it? A. Yes, sir."

"The question of attorney's fees was not mentioned in the jury room, that I heard, and I didn't mention it to anybody; I don't know whether anybody else said anything about it or not. I couldn't say what they said privately and individually because I didn't discuss it with them. As I understood the charge, we were charged not to discuss the question of attorney's fees, and I tried to reach a verdict under the charge as given, and finally agreed upon the verdict rendered in the case, and felt that it was fair compensation that the plaintiff was entitled to under the charge of the court. I felt that it would take that to compensate him for the condition he was in and the lack of ability to earn money, and the suffering he had gone through. I didn't consider in my own mind any certain amount that I would give the plaintiff because he had to pay an attorney. I didn't consider how much he would have to pay his attorney, because I didn't know. I had no idea, and as far as I am able to say, I couldn't say that I allowed any specific amount for attorney's fees. My idea was to compensate the plaintiff for the damages he had sustained, and as I said, I knew that the attorneys would get something; but I didn't know the amount, or whether it had been paid after that. So far as I could, I excluded attorney's fees from my consideration in arriving at the verdict, and the amount that I voted for was the amount that I thought was right after what the court permitted us to consider."

[1] The contention is made by plaintiff in error that, as no overt act of misconduct operated to cause the juror to give consideration outside of the elements of damage submitted in the court's charge, the mental processes or reasonings by which the juror reached his verdict, however faulty, illogical, or improper, does not constitute misconduct within the contemplation of article 2234, R. S. 1925, which expressly authorizes the court to hear evidence thereof from the jury in cases where the ground of the motion for new trial is misconduct of the jury.

Prior to the enactment of article 2234, it had been consistently held by the courts of this state that a juror could not be heard by affidavit or testimony to impeach his verdict. The statute was passed to modify this firmly fixed rule. We think the evident purpose of this statute was to permit jurors to testify with reference to some overt act of misconduct on the part of some member of the jury or a third person, and of such a nature as might be reasonably calculated to improperly influence some member of the jury in reaching a verdict.

We are unable to bring ourselves to the view that it was contemplated by this enactment to permit jurors, after their verdict had been returned, to be subjected to an inquisition in order that it might be ascertained whether they disobeyed or misunderstood the charge of the court or misunderstood or misapplied the facts in evidence. To sanction such a construction of the statute would render verdicts of juries uncertain and of little value, and the granting of new trials, instead of being the exception, would become the rule. The court would be compelled to set any verdict aside when one juror could be procured who would testify that he did not obey the charge of the court or did not properly apply the law to the facts, as such testimony would be impossible of contradiction. A juror so testifying would not be subject to the pains and penalties of perjury. It is altogether probable that an average juror, if called several weeks after his verdict had been returned, when the charge of the court and the testimony had been dismissed from his mind, would be hard pressed to sustain himself against a charge of misconduct, when subjected to a vigorous examination by a skillful attorney in analyzing the mental processes and reasoning used by the juror in applying the law given in the charge of the court to the facts of the case. We can hardly imagine a more dangerous procedure than that which such practice would sanction. If such were the rule, verdicts of juries would indeed rest upon a most precarious basis.

With the exception of this case, our Courts of Civil Appeals have uniformly refused to sanction a construction of this statute which would permit such inquiry in the absence of proof of some overt act of misconduct. In the case of Texas Employers' Ins. Ass'n v. Eubanks, 294 S. W. 905, the Amarillo Court of Civil Appeals, in discussing this question, said:

"A juror cannot impeach his verdict, and illogical reasons therefor are not misconduct. Ross v. West Texas Utilities Co. (Tex. Civ. App.) 281 S. W. 641. The views and notions that jurors may entertain, individually or collectively, of the law, cannot affect their verdict. Kilgore v. Jordan, 17 Tex. 342. And the failure of the jury to 'comprehend the charge of the court with reference to the facts proven,' and the failure 'to apply the law given in the charge to the evidence before them,' cannot be urged as misconduct. Phillips v. T. & P. R. Co. (Tex. Civ. App.) 281 S. W. 1104."

In the case of Ellerd v. Ferguson (Tex. Civ. App.) 218 S. W. 605 (Seventh Dist.), the motion for new trial alleged misconduct because the jury answered the issues as they did under a mistake as to a meaning thereof. The court declined to consider this such misconduct as contemplated by the statute and in disposing of the question stated:

"It would be improper to allow jurors to impeach their verdict in this way. Crosby v. Stevens [Tex. Civ. App.] 184 S. W. 712, par. 28; Willingham v. Brown [Tex. Civ. App.] 163

S. W. 107. The ground of the motion for new trial does not show such misconduct of the jury in arriving at the verdict as to bring the case within the provisions of article 2021, R. S. [article 2234, R. S. 1925]."

A similar rule is announced in G., C. & S. F. R. Co. v. Moser et al. (Tex. Civ. App.) 277 S. W. 722 (Third Dist.), in which it was remarked:

"Appellant cannot impeach the verdict of the jury nor insist that they did not follow the court's charge in arriving at their verdict without showing some misconduct of the jury under article 2021, R. S. 1911; article 2234, R. S. 1925. In the absence of such misconduct, the mental processes and calculations which guided the jurors, under the court's charge, in arriving at their verdict, cannot be inquired into."

In the case of Farrand v. H. & T. C. R. Co. (Tex. Civ. App.) 205 S. W. 845 (First Dist.), the court, in construing this statute, said:

"The statute in question, although changing the rule as it exists at common law, as above indicated, does not permit a juryman, either by affidavit or by testimony in open court in support of a motion for a new trial, to say that the verdict returned by him on special issues, under his oath, and received by the court as his verdict, did not in fact reflect his convictions, but was rendered by him in the way it was because he did not know the meaning of an unambiguous charge, or did not know the legal effect of the answers he made."

A similar construction of the statute was given in the case of Hermann v. Schroeder (Tex. Civ. App.) 175 S. W. 788, where it was attempted to be shown by the testimony of a juror that the court's charge was misunderstood and that a different verdict would have been rendered but for such fact. The court held that such inquiry was not permissible, and, in discussing the matter, said:

"We know of no law, either statutory or otherwise, which requires or authorizes the court to make such inquiry of the jury as was requested in this case. The jury is presumed to be composed of men of ordinary intelligence, who understand the court's charge. If such practice as here suggested were indulged in, it would soon become intolerable. There is no allegation or intimation that the jury, or any member of the same, was guilty of misconduct. The jury, nor any member thereof, cannot impeach their verdict by stating, after they have rendered the same, that they did not understand a plain charge of the court."

[2] We are thoroughly in accord with the construction given the statute in the above cases. Trial courts should permit no inquiry into the mental processes or calculations of a juror in arriving at his verdict until such inquiry is made necessary to determine the effect on a juror's mind of some proven overt act of misconduct.

The testimony of the juror Jaynes being thus eliminated from consideration, the issue of misconduct of the jury must be determined alone from the testimony of the juror Bramlette. This juror was called as a witness by the defendant in error. He testified that during the deliberation of the jury somebody mentioned attorney's fees, but that their attention was called to the fact that the court had charged that no mention be made of this, and that it was not mentioned any more. He testified directly and positively that he did not consider attorney's fees in arriving at his verdict; that he was trying to be governed by the charge, and did not concern himself over the question of attorney's fees, and did not discuss it at all; that in making up his verdict he did not take into consideration whether or not the attorneys would share in it. After the juror had given this positive evidence he was confronted with an affidavit, which he admitted voluntarily executing, in which he had stated:

"The matters of attorney's fees were mentioned—that is, the part the lawyers would get out of the amount we awarded as our verdict—but there was not much talk about it. However, I voted for $20,000, and in arriving at this amount, I naturally considered in my mind that the lawyers had to get part of it, and I made it larger than I would had I known the lawyers would not get any part of it. I didn't talk that, but it was in my mind."

[3] Counsel for defendant in error earnestly insists that the testimony of this juror shows he was influenced in arriving at his verdict by the mention of attorney's fees. This insistence loses sight of the fact that the only substantive evidence before the trial court was the direct and positive testimony of the juror that he was not so influenced. It is only in the juror's affidavit, made prior to the hearing, that it is shown that the question of attorney's fees in any way influenced his verdict. The rule is settled that proof of inconsistent statements of a witness can be introduced and considered only for the purpose of impeachment, and not as substantive evidence of the truth of the matters stated. 40 Cyc. p. 2764; G., H. & S. A. R. Co. v. Janert, 49 Tex. Civ. App. 17, 107 S. W. 963; Spiars v. Dallas Cotton Mills (Tex. Civ. App.) 32 S. W. 777; Houston & T. C. R. Co. v. Poole, 63 Tex. 246; Hobbs v. Blanchard, 75 N. H. 73, 70 A. 1082, 18 L. R. A. (N. S.) 939. The rule is well illustrated in the Hobbs Case, supra, wherein it is stated:

"Lacombe (the man who handled the dynamite) was called as a witness for the plaintiff and denied that he put the dynamite there at the time alleged. The plaintiff was then allowed to contradict the witness by using a deposition in which he testified that he put it there at that time. The effect of the deposition as evidence was merely to destroy the contradicted statement. It was not positive evidence of the contradicting facts."

[4] The only effect the impeaching affidavit of the juror in this case could have had was

to destroy his testimony, wherein he stated that the mention of attorney's fees did not influence him in reaching his verdict. It could not be used for the purpose of establishing that he was in fact so influenced. If the affidavit, admissible only for the purpose of impeachment, should have been considered by the trial court as establishing the truth of the matters therein stated, such procedure would transform mere hearsay into substantive testimony. Duke v. Commonwealth, 191 Ky. 138, 229 S. W. 122.

[5] Conceding that the effect of the impeaching evidence was to destroy the contradicted testimony given by the juror, then there was no evidence before the trial court as to what effect the mention of attorney's fees had on the juror in arriving at his verdict. The trial court under such a view was called upon to determine whether a mere mention of attorney's fees, followed by an immediate admonition of a juror that under the court's charge it was improper to consider such fact, leaves the matter in doubt as to whether the juror was improperly influenced. We think, under this view of the case, the trial court did not abuse the discretion vested in him in overruling the motion for new trial. G., H. & S. A. R. Co. v. Cook (Tex. Civ. App.) 214 S. W. 539.

[6] The judgment of the trial court on this issue is clearly sustainable upon another ground. The juror Bramlette being contradicted upon a material portion of his testimony, the trial judge was authorized to deem such contradiction as going to his credibility on all of his testimony (St. Louis, B. & M. R. Co. v. Price [Tex. Civ. App.] 244 S. W. 643), and was therefore justified in disbelieving the juror's statement that attorney's fees were even mentioned during the deliberation of the jury. This was especially true in view of the fact that three jurors swore that they heard no mention of attorney's fees, two others were not interrogated with reference thereof, and six jurors, shown to have been in attendance on the hearing of the motion for new trial, were not called to testify that any such occurrence took place.

[7,8] It must be borne in mind that the trial court has the same latitude in passing upon the evidence offered on the hearing of a motion for new trial as to the credibility of the witnesses and of the weight to be given their testimony, as a jury has with reference to witnesses heard upon the original trial. When a witness is impeached upon a material portion of his testimony, a jury has the right to disbelieve his entire testimony. This is peculiarly within their province. The trial court in hearing testimony on a motion for a new trial has exactly the same privilege. H. & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

[9-11] The defendant in error, having offered evidence tending to impeach the only

witness who testified that any mention of attorney's fees was made before the jury in their deliberation, is not in position to complain that the trial court gave full effect to such impeaching testimony and disbelieved the entire testimony of the juror. Inasmuch as we must take the most favorable view of the evidence which the trial court was authorized to take, the presumption must be indulged that the trial court found that no mention of attorney's fees was made before the jury.

The court of Civil Appeals seems to strongly rely upon the case of Southern Traction Co. v. Wilson, 254 S. W. 1104, decided by this Commission, to sustain its conclusion that the judgment in this case should be reversed on account of the alleged misconduct of the jury. We do not think the holding in that case in any way conflicts with the conclusion reached in this case. In the Wilson Case the finding of misconduct did not rest alone upon the testimony of an impeached juror. A number of jurors testified, without dispute, not that the question of attorney's fees was merely mentioned, followed by prompt rebuke, but that the same was fully and freely discussed by the jury. One of the jurors thought, and so stated, that the attorneys would get half of the recovery, while others placed the amount at a less sum. Under such testimony the trial court was, of course, not justified in finding that there was no mention of attorney's fees, whereas he was clearly authorized to do so in the present case. Aside from this, the juror Moore in the former case not only did not deny that he was influenced by attorney's fees in reaching his verdict, but, in effect, admitted that he was so influenced. We quote from Judge Powell's opinion:

"What does Moore say? It is true that, in certain portions of his testimony before the court, he says he considered the legitimate evidence and the charge of the court * * * but he never does say that he did not consider the discussion about attorney's fees also in reaching his verdict. That is very significant. On the other hand, portions of his said testimony show rather clearly that he himself thought the improper discussion in the jury room may have influenced him to a certain extent."

To sustain the proposition that the juror's testimony, independent of the impeaching affidavit, does show that he was influenced in reaching his verdict by attorney's fees, Judge Powell quotes the following testimony given by the juror:

"I cannot say what effect that discussion (about attorney's fees) had on me. Of course it was in my mind at the time, but I can't say that it affected me to a great extent. It is * * * hard * * * for me to answer * * * whether it affected me or not at all."

In this case, aside from the impeaching affidavit, there was no evidence that the juror

was influenced to any extent whatever by the mention of attorney's fees. Moreover, there is quite a distinction between a full and general discussion of attorney's fees by a jury, as was shown in the Wilson Case, and the mere mention of such fact, followed by a prompt rebuke from a juror that such fact must not be considered, as is testified to in this case.

There being no complaint that the Court of Civil Appeals did not correctly decide the other assignments presented by defendant in error, we recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.