## COLE v. COLE.

### No. 12292.

Court of Civil Appeals of Texas. Fort Worth.
March 29, 1930.

Rehearing Denied May 17, 1930.

McLean, Scott & Sayers and S. F. Houtchens, all of Fort Worth, for appellant.

Cal Estill, Jesse E. Martin, and Dawson H. Davis, all of Fort Worth, for appellee.

BUCK, J.

Mrs. Bon May Cole filed suit against Thomas J. Cole for divorce and division of the community property. She alleged that on or about December 20, 1919, plaintiff and defendant were introduced to each other in Fort Worth and shortly thereafter defendant began to make love to plaintiff; that he told said plaintiff that he loved her and wanted her to marry him, but because of the recent death of his wife he did not want to have a formal ceremony of marriage, but he wanted plaintiff to agree to live with him as man and wife, to which this plaintiff agreed; that they then and there entered into a mutual agreement to become man and wife for life, and that immediately thereafter they consummated said agreement by publicly living together and cohabiting together as man and wife; that in inducing plaintiff to enter into this agreement and publicly live and cohabit with him, the defendant represented to this plaintiff that under this agreement and arrangement they were as legally married as if they were to appear before a minister and be formally married with the use of a marriage license; that this plaintiff believed the defendant and believed his statements that he loved her, and entered into the agreement to become his wife in good faith and continued to live with him publicly and cohabit with him for a period of more than nine years thereafter; that during the time plaintiff and defendant lived together as man and wife, plaintiff continued to work and earn wages or a salary, and that on many occasions she gave defendant money for his personal expenses; that she assisted in paying for the food in the home; that she did the necessary housework in the home for herself and defendant, and paid the money necessary to furnish the home.

Other formal and necessary allegations

were made in her petition. She sued for an interest in the community property which she alleged consisted of two chick hatcheries at Sherman, Tex.; one chick hatchery at Madill, Okl.; one chick hatchery at Davis. Okl.; three chick hatcheries at Oklahoma City, Okl.; one chick hatchery at Kingfisher, Okl.; three chick hatcheries at El Reno, Okl.; two chick hatcheries at Chickasha, Okl., all of which she alleged to be of the value of $19,500; one Chevrolet automobile, alleged to be of the value of $500; four brooders of the value of $25; and money on hand in a bank at Sherman to the amount of $131.

The defendant answered by a general demurrer, a number of special exceptions, and a general denial, and specially pleaded the statute of limitation as to money alleged to have been loaned by plaintiff to defendant, and especially pleaded that he paid all of such loans back to her. He especially denied that there was any relation between him and plaintiff that would constitute a marriage or a common-law marriage, and if any relation as plaintiff alleges may have existed between plaintiff and defendant, if true, was a relation of sin, shame, and adultery.

The cause was submitted to a jury upon special issues. The jury found that plaintiff and defendant were married by a common-law marriage on January 15, 1919. Upon this verdict the court rendered judgment dissolving the bonds of marriage formed by the common-law marriage which the jury found to exist, and granted the plaintiff a divorce. He also appointed a receiver to take possession of the property alleged to have been owned as community property of plaintiff and defendant, situated in Texas, and authorized said receiver, W. D. Deacon, to take possession of said property and to sell the same, and to institute appropriate legal proceedings to appoint a receiver or have a receiver appointed in Oklahoma with appropriate powers of possession, operation, and sale, and the receiver was ordered to sell each of said properties in whole or separately as he might most advantageously do and to operate the same until sale could be made.

#### Opinion.

The first assignment of error is directed to the action of the trial court for refusing to instruct a verdict for defendant. We do not think such instruction should have been given and overrule such assignment.

The second assignment urges error in the action of the trial court in overruling appellant's motion for new trial because of alleged misconduct of the jury in considering extraneous matter in determining its answer to issue No. 1 that plaintiff and defendant entered into a marriage relation by a common-law marriage. The bill of exception shows that on a motion for rehearing certain jurors were interrogated as to what took place in the jury room. Wesley Cosby testified that he was one of the jurors in the case and after they elected their foreman they discussed the first question in the charge. That the jury at that time stood seven to five for the plaintiff. That the witness voted for the plaintiff.

Mrs. Cole had formerly been married to Eugene Nicholson, and she testified that she married him in 1901, and that he left her in the winter of 1912; that he wrote her before she married Cole and told her that he was going to sue for a divorce, and that he sent her a copy of a paper containing an account of a judgment of divorce rendered, in which he was granted such divorce. The court instructed the jury that they must not consider any testimony in regard to the conversations had between Mrs. Nicholson and her husband and this newspaper account of the divorce granted, as any evidence of the truth. We think that it was admissible to show her good faith in entering into the common-law marriage with Cole; that she believed that she was divorced from Nicholson.

Some of the jurors discussed the question of whether or not Mrs. Cole, or Mrs. Nicholson, had been divorced from Nicholson, and those that were favoring the plaintiff took the position that if she had not gotten her divorce from Nicholson, the evidence of that fact would have been produced in court and she would have been tried for bigamy. That counsel for defendant, S. F. Houtchens, would have had testimony on that matter, if in fact she had not been divorced.

We do not think that the conduct of the jury was of such a nature as to render the judgment found reversible.

Prior to the enactment of article 2234, Rev. Civ. Statutes of 1925, which statute was enacted in 1905, the courts held that a jury could not impeach its own verdict by testimony as to the discussion of matter outside the record, etc.

In the case of Bradley v. T. & P. Ry. Co., 1 S.W.(2d) 861, 863, opinion by Justice Leddy of the Commission of Appeals and approved by the Supreme Court, the court said:

"Prior to the enactment of article 2234, it had been consistently held by the courts of this state that a juror could not be heard by affidavit or testimony to impeach his verdict. The statute was passed to modify this firmly fixed rule. We think the evident purpose of this statute was to permit jurors to testify with reference to some overt act of misconduct on the part of some member of the jury or a third person, and of such a nature as might be reasonably calculated to improperly influence some member of the jury in reaching a verdict. * * *

"'Appellant cannot impeach the verdict of the jury nor insist that they did not follow

the court's charge in arriving at their verdict without showing some misconduct of the jury under article 2021, R. S. 1911; article 2234, R. S. 1925. In the absence of such misconduct, the mental processes and calculations which guided the jurors, under the court's charge, in arriving at their verdict, cannot be inquired into.'"

We think in the instant case the questions and suggestions of the jury were but evidences of a mental process in their effort to reach the truth, and that as such the evidence with reference thereto does not present any error.

In Phillips v. T. & P. Ry. Co., 281 S. W. 1104, 1105, by the Texarkana Court of Civil Appeals, the court said:

"Another contention urged in appellant's brief is that the court below erred when he refused to permit appellant to show by the affidavits, and testimony of jurors who tried the case, in support of his motion for a new trial that 'the jury,' quoting, 'misapprehended and misinterpreted the whole case, showing that they failed to comprehend the charge of the court with reference to the facts proven and failed to apply the law given in the charge to the evidence before them.' The contention is overruled. Caylat v. Railway Co., 252 S. W. 478, 113 Tex. 131."

This case is cited in Bradley v. T. & P. Ry. Co., supra. We conclude that this assignment should be overruled.

We further hold that the admission of the testimony as to the paper received by the then Mrs. Nicholson from her former husband, giving an account of the divorce granted, was properly admitted under the instructions of the court for the jury not to consider such testimony as to the truth of such information.

■ We think the evidence is sufficient to establish a common-law marriage. Mrs. Cole testified that when she talked with Cole, they being at the time at a hotel in Fort Worth, Cole told her that "I wish we could get married"; and she said, "well, it is no fault of mine, for I love you well enough to"; that Cole told her that he could not go through with a formal marriage on account of his grief for his wife who had recently died, but said, "I will tell you what we will do if you will go ahead and be with me, what I want you to be, I will never leave you, and I will marry you just as soon as I can, and we will be married anyway now, because there is no Bible, there is no church, or Christian act in the world that don't approve of it, and no Texas law, and in time we will be married anyway." He further said: "I will show you I will make money, if you will cling to me and help me. I will stick to you. I will be everything that a husband can be to you." At another time he said: "I will never take no for an answer, I will never desert you." She further testified: "Along about the mid-

dle of January, 1919, I had an agreement to live with him from then on out. He said we would be married then, that was our marriage agreement."

A number of neighbors, men and women, testified that Mrs. Cole introduced to them Mr. Cole as her husband, and that he never denied the relation, and that they lived together as man and wife for a number of months, perhaps years, on Front street and on Maddox avenue.

■ It is true that there are some circumstances which might be said to tend to cast a doubt upon whether or not Mrs. Cole was telling the truth. But the jury were the judges of the credibility of the witnesses and the facts proved, and we are not justified in overriding their verdict and the judgment of the trial court.

■ On the hearing of defendant's second amended motion for new trial, Judge H. S. Lattimore, the trial judge, testified:

"Mrs. Cole, or this lady, I don't know that she told me her name, but about three weeks, I judge, might have been less, but between ten days and three weeks before this suit was filed, came in the court room here, one afternoon, and sat back there on the bench. Presently when I came in my office, she came in here. She said she wanted my advice. She said that Mr. Cole had sent her some money to come to California a few weeks before this conversation and told her if she would come out there, he would marry her; said she went out there on his money and lived with him about three weeks, I believe she said, maybe not so long, but anyway a few days, and that he then told her that he would not marry her, but would give her money to come back to Texas, and refused to live with her any longer, and she did take his money and come back to Texas. I asked her if they slept together and had intercourse, sexual intercourse, and she said yes. I told her then that she had, on that state of facts, a criminal remedy, prosecuting him for violation of the Mann Act (18 USCA §§ 397–402), and a civil remedy for breach of promise. I suggested that she go to the District Attorney at the Post Office, United States Attorney at the Post Office, if she wanted to prosecute a criminal suit, and get her a lawyer if she wanted to follow the civil route.

"She said here in my office on that occasion that she had known him before that time and he had been intimate with her; that was before the time she went to California. As I recall it she said she had just gotten back from California when she came to see me, that she had been out there, as I recall, about three weeks, but I might be in error; several days anyway, but not as much as a month. I know she expressed it in weeks, might have been one or two.

It is urged that on account of this testimony, not alleged to be newly discovered, the court should have granted a new trial. We think the facts testified to by Judge Lattimore were in the main testified to by the plaintiff on original hearing. It is true she did not tell him in this conversation that she had been living as a common-law wife of Cole, but she did state that they had slept together and had sexual intercourse. We do not see that this testimony of Judge Lattimore presents any ground for a new trial, and overrule this assignment.

All other assignments are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

The evidence in this case shows that Mrs. Cole got a divorce from Eugene Nicholson, filing her suit for the divorce on February 18, 1920, and securing the divorce the latter part of that summer. She testified that she was induced to file a suit for divorce because Mr. Cole wanted her to do so, rather than to rely on a divorce granted theretofore, which Mrs. Cole testified Mr. Nicholson had written her he had obtained. After this divorce was granted, Mrs. Cole continued to live with Mr. Cole as his wife, up to some time in September, 1928. Therefore, for some eight years the appellee and appellant continued to live and cohabit together as husband and wife after the divorce was obtained from Nicholson. Hence, the evidence shows that the questions discussed by the jurors Cosby, Tyson, and Thompson were with reference to matters entirely beyond the record, according to appellee's testimony, and the records of the Seventeenth judicial district court introduced in evidence. At least for eight years Mrs. Cole was authorized to contract a marriage with Cole. We believe that under the ruling of the Supreme Court in Bradley v. T. & P. Ry. Co., 1 S.W.(2d) 861, 862, and other cases cited in our original opinion, the motion for rehearing should be overruled. It is accordingly so ordered.