**CONNALLY et al. v. CULVER et al.**

No. 5803.

Court of Civil Appeals of Texas. Texarkana.
April 17, 1941.

Rehearing Denied April 24, 1941.

H. A. Leaverton, of Longview, and Black, Graves & Stayton and John W. Stayton, all of Austin, for appellants.

Wynne & Wynne, Henry H. Harbour, and Philip Brin, all of Longview, for appellees.

WILLIAMS, Justice.

Drue A. Connally, Jr., was injured and Joe H. Culver was killed when a pickup truck occupied by the two left the highway on a curve near Joaquin, Texas, and crashed into a tree. In this suit by Connally, Jr., joined by his parents, recovery was sought for resulting injuries. Gaines Culver in his legal capacity as representative of the estate of his father, together with the deceased's other children, were named defendants. Connally, Jr., was between nineteen and twenty years of age at the time of the accident. The pick-up belonged to Culver. The accident occurred at night as the two were returning from Mansfield, La., where they had been to buy automobile parts for another truck belonging to the deceased. No one witnessed the accident. Connally, Jr., was unable to detail any facts. Plaintiffs offered evidence that Connally, Jr., had theretofore been employed to drive the car for Culver. Their evidence that Culver was driving at the time of the crash was sharply controverted by defendants.

In response to special issues Nos. 4 to 11, inclusive, the jury found the operator of the truck guilty of several acts of negligence, with each a proximate cause of the accident. In response to issue No. 11–A, the jury answered that Connally was not a guest of Culver at the time; and to No. 15 the jury found that Connally, Jr., had suffered damages of $5,000; and in response to Nos. 14 and 16, they found that the parents had suffered damages in the sum of $1,323. The jury answered "No" to special issue No. 3, reading: "Do you find from a preponderance of the evidence that at the time and on the occasion in question the said Ford pickup truck was being driven (by) Joe Culver?"

The jury answered "Yes" to special issue No. 12, reading: "Do you find from a preponderance of the evidence that at the time and on the occasion in question, the Ford pickup truck was being driven by Drue A. Connally, Jr.?"

Upon these findings plaintiffs were denied a recovery. No contention is made that the jury findings would support a judgment other than so rendered. No claim is made that the evidence is insufficient to support above findings.

The principal question presented on this appeal is that a new trial should have been granted on account of alleged misconduct of the jury in their verdict, namely: That during the jury's deliberations on special issues Nos. 3 and 12, some of the jurors stated that as they had already answered Connally was an employee, it became immaterial and did not make any difference whether Connally was driving or not; and in reliance upon such remarks, certain jurors who had at first voted to find that Culver was driving the car, switched their votes and answered that Connally was driving.

Closely related to the foregoing, appellants assert, further, that the jury reached their verdict through a "trade-out"; that is, certain members agreed to surrender their conviction, and did so, in answering certain special issues in consideration of other members of the jury doing likewise as to other issues.

The testimony given upon the hearing of the motion which alleged jury misconduct reflects that the chief controversy and major discussion centered about their answer to issue No. 15, which related to the amount of damages to be allowed Connally, Jr. The amount favored by the jurors ranged from $8,000 to nothing. In the words of one juror, which reflects the manner in which they reached the agreement on damages, "There were two of us holding out for more money, and one was holding for not any at all. The latter finally said he would agree to $5000 if we would. * * * The two of us that were holding out for more * * * finally agreed to $5000." Gillis, one of the jurors who was holding out to award more money, testified: "At the time, the vote still stood either ten to two or eleven to one that he was employed * * * it was mentioned or said that we will vote that he wasn't employed, and I myself said, 'No, I am not going to vote that way when at least ten of us voted he was employed.'" Gillis did not change his vote on No. 1 which related to whether Connally was employed by Culver at the time. The issue was answered "Yes." Misconduct of the jury was not based upon their answer to issue No. 1, nor was it alleged that the "trade-out" related to issue No. 1. The foregoing reflects the evidence and the only evidence that smacks of a "trade-out."

After the jury had agreed upon the amount of damages, they went back to consider the other issues they had not agreed upon. Among such issues not answered were Nos. 1 and 3. The evidence is not clear as to what other issues had been skipped. The juror Gillis was asked whether any one stated in the jury room before they had answered No. 3 that it was immaterial how they answered who was driving the car at the time of the accident. In reply he testified, "Well, there was quite a bit of deliberation as to who was driving and who wasn't. I know at one time I changed my vote. * * * I had voted that Culver was driving and there was a remark made, 'Gentlemen, we have to hash out some of this stuff here, that is all, we have to get an agreement;' and I don't know whether the word 'material' was used or not, but it is possible they had the same idea I had, that as long as he was considered working for Culver, well, he was doing what he was supposed to be doing whether he was driving or not. That's why I changed my vote." In response to a similar inquiry, juror Calloway replied: "A. Yes, sir; I believe there was.

"Q. Well, was there? Just state. A. Yes, sir, there was.

"Q. Now up until that time had you voted that Culver was driving? A. Yes, sir.

"Q. Then, after that did you decide that he was not driving? A. I did. * * * It helped me change my vote. * * * Well, it did change my vote. * * *

"Q. Believing that it was immaterial? A. Yes, sir. * * * I believe it was Mr. Denton, the foreman, who said anything about it being immaterial."

Calloway's affidavit which detailed the alleged jury misconduct was attached to the motion for new trial. Harbour, an attorney in the case, questioned Calloway about the affidavit. "I asked him if any remark was made with reference to whether it was immaterial and he told me at that time that he had gotten that impression, that he wouldn't say for sure whether he said it or whether he just thought it, but that it was his best recollection that it was said." Within the province of the court to consider was Calloway's further testimony developed upon cross-examination as reflected in the following questions and answers:

"Q. The truth of the business is, or the only reason you are here is you were trying to give the boy some money, weren't you? A. I was trying to.

"Q. That's right, and you were trying to answer the issues so you could? A. Yes, sir.

"Q. And you tried your best to do that, didn't you? A. Why, yes."

Mr. Denton, the foreman, denied that he made any such statement claimed by Calloway. The other jurors testified that they did not recall such a statement being made, that they did not make it, and if any one else made such a statement, they did not hear it. The other testimony is to the effect that after they had agreed upon the amount of damages, "they then went back to the issues they had skipped, and then everybody agreed that those issues should be answered as the jury did answer them."

After hearing the evidence, the court overruled the motion for new trial without making any specific findings of fact. "In considering evidence offered on the hearing of a motion for new trial," the trial court "has the same latitude in passing on the credibility of the witnesses, and of the weight to be given to their testimony, as a jury has on the original trial." St. Louis, B. & M. R. Co. v. Cole, Tex.Com.App., 14 S.W.2d 1024, 1025. The alleged bias of the juror Calloway, the evidence offered to impeach him, the indefiniteness of both, and the testimony of the other jurors that such argument or statements were not made were within the province of the trial court to consider and weigh. "We must indulge the presumption that the court accepted the version given by the jurors who testified that the particular misconduct complained of did not occur." St. Louis B. & M. R. Co. v. Cole, supra; Bradley v. Texas & P. R. Co., Tex.Com.App., 1 S.W.2d 861; Bradshaw v. Abrams, Tex.Com.App., 24 S.W.2d 372; Wohlford v. Texas & N. O. Ry. Co., Tex. Civ.App., 128 S.W.2d 449; Edens-Birch Lumber Co. v. Wood, Tex.Civ.App., 139 S.W.2d 881; Allala v. Tandy & Sons, 127 Tex. 148, 92 S.W.2d 227. The assignments of error based upon misconduct of the jury are overruled.

The witness Bishop, employed as a Federal tick inspector, was stationed on the date of the accident at a state-line bridge near Logansport, Louisiana, with

the duty of inspecting all trucks crossing this bridge into Louisiana. He testified that this couple crossed the bridge four times between 5 or 5:30 p. m. and 9:30 or 10 p. m. on the date of the accident, and that each time Connally, Jr., was driving. The bridge is about four miles from the place of the accident. On cross-examination, he denied that he made any statement to Connally, Sr., contrary to above. Connally, Sr., the father, then testified that he had a conversation with Bishop nine months prior to the trial, in which Bishop said the couple had crossed the bridge only twice; that on their first crossing they had stopped and that Connally was then driving the car; that on their return trip out of Louisiana it was unnecessary for them to stop at his station and he (Bishop) did not know who was driving, but presumed the boy was. Further to impeach Bishop, plaintiff offered the testimony of Bowden whose testimony was practically to the same effect. In rebuttal, the witness Davis, over objections of plaintiffs, testified that in a conversation with Bishop in the early fall the latter had told him that the couple had passed his station four times on that day and the boy was driving the car each time. The propositions which attack the admissibility of the evidence given by the witness Davis is overruled. "Former statements made by an impeached witness and consistent with his present testimony will be received in evidence where an attempt is made to show that such testimony is a recent fabrication." 45 T. J. p. 178, Sec. 296; 45 T. J. p. 174, Sec. 294; Texas & P. Ry. Co. v. Hall, 17 Tex.Civ.App. 45, 43 S.W. 25; Houston & T. C. Ry. Co. v. Fox, 106 Tex. 317, 166 S.W. 693; Gulf, C. & S. F. Ry. Co. v. Garren, 96 Tex. 605, 74 S.W. 897, 97 Am.St.Rep. 939; McCormick & Ray, Evidence, p. 441. The limitation to above rule set out in Aetna Life Ins. Co. v. Eastman, 95 Tex. 34, 64 S.W. 863, relied upon by appellants, are not applicable to the facts here involved. Here, the witness Bishop is not a party to the suit. He is not related to any of these litigants. This witness, a nonresident of Texas, is a casual acquaintance, if not a stranger, to any of the litigants. The evidence is entirely absent any motive for fabrication on Bishop's part, of any influence exerted upon him, or of any interest in the outcome of this litigation.

The judgment is affirmed.