BILLY BAKER MOBILE HOMES, INC., Appellant,

v.

Gld FOSTER, Appellee.

No. 11291.

Court of Civil Appeals of Texas.

Austin.

April 28, 1965.

Smith, Rose & Finley, San Angelo, for appellant.

Marvin C. Hanz, San Angelo, for appellee.

ARCHER, Chief Justice.

This is a suit for damages based on alleged fraud in connection with a contract for the sale of a mobile home from appellant to appellee.

On trial of this case to the jury, the jury answered that appellant's employee, Billy Sellers, made certain material misrepresentations at the time the contract of sale was entered into, found that the mobile home, as represented to appellee, had a cash market value of $5,200.00, and that such mobile home had an actual value at the time it was delivered of $2,000.00.

Appellant filed a Motion for Judgment Non Obstante Veredicto, which was overruled by the trial court, and judgment was entered for the appellee.

Appellant then filed a Motion for New Trial, which was overruled by the trial court.

The appeal is based on 9 points as error by the trial court in rendering judgment in the absence of proof that appellant did not intend to perform the promised actions at the time such were made; in submitting and rendering judgment on the issues which inquired as to the difference between the cash market value of the mobile home as represented and the value of such as actually received; that there is no evidence or there is insufficient evidence to support the finding of the jury that the home had an actual market value of $2,000.00 at the time it was delivered; to the submission of Issues 5a and 11, and finally that there is no evidence or there is insufficient evidence to support the jury's answers to Issues Nos. 5, 6, 7, 8 and 9.

Appellant was a dealer in mobile homes. Appellee ordered a specially built trailer and the parties entered into a written contract in August 1961 and the sales price was $5,295.00, an allowance of $1400.00 on a mobile home owned by appellee. The purchase contract entered into by the parties provided:

"6. No warranties, express or implied, representations, promises or statements have been made by seller unless endorsed hereon in writing. No modification of any of the terms or conditions hereof shall be valid in any event, and the purchaser expressly waives the right to rely thereon, unless made in writing duly executed by the holder of this contract."

On September 1, 1961 the trailer was delivered to appellee and shortly thereafter a hard rain fell and some water leaked into the interior. Appellee called appellant and one of his employees made some adjustments to the roof by the use of a sealer compound.

Later in the Fall an employee of the manufacturer of the trailer came to inspect it and to do any necessary repairs to restore the trailer from any damage caused by the rain, but appellee refused to permit any repair work.

Appellee elected to stand on the third count in his Second Amended Original Petition, asking for the measure of damages between the reasonable fair cash market value of what he actually received and what he would have received if it had been as represented to him, and waived any other

counts; alleging that Sellers as agent for defendant represented to plaintiff that the mobile home would be of sound construction and one which would turn the weather including rain, would have a roof constructed of solid sheet roofing without any joints; that such representations were made and were material to the written contract and were not true, and Sellers knew they were not true, and did not then and there intend to carry out such representations but delivered a mobile home which required sealing between the joints.

The allegations of misrepresentation relied on by appellee are covered in Special Issue No. 1, and correlative Issues Nos. 2, 3, 4 and 5, and Special Issue No. 6 and correlative Issues Nos. 8, 9 and 10.

Special Issue No. 1 reads:

"Do you find from a preponderance of the evidence that before plaintiff, Gid Foster, executed the contract for the purchase of the mobile home in question on or about August 1, 1961, Billy Sellers represented to the plaintiff, Gid Foster, that the mobile home plaintiff was purchasing from defendant would be one that would turn the rain? Answer Yes or No.

"Answer: Yes."

Special Issue No. 6 reads:

"Do you find from a preponderance of the evidence that before plaintiff, Gid Foster, executed the contract for the purchase of the mobile home in question on or about August 1, 1961, Billy Sellers represented to the plaintiff, Gid Foster, that the mobile home plaintiff was purchasing from defendant would be one with a roof constructed of a solid sheet of roofing? Answer Yes or No.

"Answer: Yes."

Special Issues Nos. 2 and 7 deal with the element of "scope of employment;" Nos.

4 and 9 with "falsity" and Nos. 5 and 10 with "reliance."

Appellant objected to the charge because, under the facts of this case, it was necessary for appellee to obtain a finding that appellant did not intend to perform the promised action at the time the promises were made.

■ It is, we believe, the law that failure to discharge a promise of something to be done in the future is not fraud, and that, to be actionable, a false representation must be of a past or existing fact rather than a promise even though the promise is, without any excuse, later broken.

■ A promise made with a preconceived intention not to perform may amount to actionable fraud if the misrepresentation is material and is relied on by the other party at interest and this is a question of fact and must be proved that at the time of the making of the promise, the promisor did not intend to perform it. 25 Tex.Jur.2d, Sec. 45, page 685; Collier v. Bankston-Hall Motors, Inc., Tex.Civ.App., 267 S.W.2d 898, n. w. h.

■ In this case the trailer house had not been constructed but was on order to be built and delivered at a later time. The failure to perform is not itself evidence of intent not to perform. Texas Employers' Insurance Association v. West, Tex.Civ.App., 320 S.W.2d 55, n. w. h.

Special Issue No. 12 inquired as to the reasonable cash market value of the mobile home as represented, and the jury's answer was $5,200.00, to the submission of such issue appellant objected because there were no pleadings as to the actual cash market value, and no proof of such.

There were no allegations by appellee as to the actual cash market value of the trailer home which he traded to appellant and no proof as to the actual cash market

value of such trailer home. No issue was submitted as to the market value of the trailer home traded in part exchange for the new mobile trailer home.

■ The measure of damages, in a case of this nature, based on fraud, is the difference between the value of that which was parted with, and the value of that received. George v. Hesse, 100 Tex. 44, 93 S.W. 107; Morriss-Buick Company v. Pondrom, 131 Tex. 98, 113 S.W.2d 889, Comm.App., Sec. B, opinion approved by the Supreme Court; Massey-Ferguson, Inc. v. Easterwood, Tex.Civ.App., 363 S. W.2d 897, er. ref., n. r. e

■ Issue No. 13 inquired as to the cash market-value of the trailer delivered to appellee, and the jury answered $2000.00.

We do not believe that the verdict of the jury finds reasonable support in the record.

Lee Williams, a witness for appellee, testified that in his opinion the trailer delivered was actually worth $2000.00, "if you could sell it," but that "anybody knowing it was in that condition, they wouldn't buy it."

Carroll Pamplin testified that cost of repairing the trailer, even after more than three years, of the rain damage would not be more than $400.00, and of conversations he had with Mr. Foster, and that Mrs. Foster said that they would decline any repairs and were going the route of a law suit.

Cecil Peel, called by appellant, testified that he was employed by Billy Baker Mobile Homes and that in November 1961 he and Carroll Pamplin, a repairman from Chickasha Mobile Homes, inspected the trailer in Roby, Texas and went through it with Mr. Foster who showed them what was supposed to be wrong, and he saw evidences of a leak in the roof, but saw no major damage.

The witness testified that the trailer was repossessed about 3 years after it had been sold, and subsequently was sold for $3350.00 without any further major repairs.

We have discussed at some length the several phases of this appeal, for the aid, we believe, of the Court in a retrial.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.