**PRECISION MOTORS, Appellant,**

v.

**James V. CORNISH, Appellee.**

**No. 16851.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 24, 1967.

Rehearing Denied March 31, 1967.

Geo. C. Chapman, of Thompson, Knight, Simmons & Bullion, Dallas, for appellant.

John H. Marks, Jr., John H. Hall and Royal H. Brin, Jr., of Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

DIXON, Chief Justice.

James V. Cornish brought suit against Lotus Southwest, a corporation, and William W. Browning, Jr., doing business as Precision Motors, seeking damages for al-

leged false representations in regard to a 1964 Lotus Elan Two Seater automobile. Cornish alleged (1) that Lotus Southwest and Browning, acting in concert in the sale of the car to him on June 8, 1964, falsely represented that it was a new car, when in fact it had been used as a demonstrator and show car; and that (2) when the engine in the car burned out in late July or early August 1964 they replaced it with an engine which they represented was new, but which in fact was a used engine taken from a wrecked car.

At the conclusion of the evidence a motion for instructed verdict was sustained in favor of Lotus Southwest. Thereafter on November 16, 1965 a jury returned a verdict finding that the representation of Jerry Howell, Browning's salesman, that the car was new was *not* false; but that the later representation of Browning or his agent that the replacement engine was a new engine was false. The jury found damages in the amount of $2,000, though Cornish had pleaded for only $600 damages resulting from the installation of a used engine instead of a new one in place of the burned out engine.

On December 10, 1965, more than three weeks after the return of the verdict of the jury, appellee filed his Fourth Trial Amendment in which he increased his claim of damages from $600 to $2,000 alleged to result from appellant's fraud in replacing the burned out engine with a used engine instead of a brand new engine.

The court took the case under advisement and on March 23, 1966 rendered judgment that appellee take nothing against Lotus Southwest, but that appellee have judgment against Browning for $2,000. Since the jury found that Browning's representation that the car was new when sold to appellee was not false, the $2,000 judgment against Browning was not based on said representation. It was based solely on the alleged misrepresentation that the replacement engine was new.

No appeal has been taken from the judgment in favor of Lotus Southwest. The only appeal before us is that of Browning from the judgment against him for $2,000 based on his or his agent's alleged false representation that the replacement engine was a new engine.

## FACTS

Lotus Southwest is a corporation which imports and distributes Lotus automobiles over a territory of eight states. It makes a few retail sales but mainly sells on a wholesale basis to retail dealers. The Lotus is a foreign-made car manufactured in England. Homer Rader is President of Lotus Southwest. He is also President of Classified Parking System. Edward R. Tucker is a stockholder, Secretary-Treasurer and General Manager of Lotus Southwest. Rader and Tucker own all of the shares of stock in Lotus Southwest.

Precision Motors is a sole proprietorship of William W. Browning, Jr. He is engaged in the business of selling various makes of foreign-made cars, including the Lotus.

Lotus Southwest and Precision Motors are separate business concerns. In their ownership and control they are altogether independent of each other. However, Lotus Southwest under a rental agreement with Precision Motors occupies part of the premises leased by Precision Motors from the owner of the property. The two concerns also engage in business transactions with each other, mostly as a wholesale distributor on the part of Lotus Southwest and a retail dealer on the part of Precision Motors.

Title to the Lotus cars sold by Precision Motors is retained by Lotus Southwest until the cars are sold. Until that time the cars are placed with Precision Motors on a consignment basis. When an agreement for the sale of a car is reached between

Precision Motors and its customer, title is transferred from Lotus Southwest to Precision Motors and immediately from Precision Motors to the purchasing customer. This procedure was followed in the sale of the car in controversy to appellee Cornish. Prior to the sale the car had been in possession of Lotus Southwest for about six months.

The judgment in this case is based on the jury's affirmative answers to Special Issues Nos. 10 through 16 of the court's charge. Special Issue No. 10 is as follows:

"Do you find from a preponderance of the evidence that *at the time of the replacing of the engine* in the Lotus automobile in question *William W. Browning, Jr., or any agent acting for him, represented to J. V. Cornish that the replacement engine was a new engine?*

"Answer 'Yes' or 'No.'

"ANSWER Yes" (Emphasis ours.)

The others of the above named issues were conditioned on an affirmative answer to Special Issue No. 10. They inquired whether (11) said representation was false; (12) whether it was made to induce Cornish to accept the engine; (13) whether he believed and relied on the representation; (14) whether he would not have accepted the engine but for the representation; and (15) whether he was damaged. In answering Special Issue No. 16 the jury found damages in the amount of $2,000.

The only testimony in the record that Cornish was to receive a new engine to replace the burned out engine was offered by Cornish himself. When Cornish complained about the burned out engine a conference was held about the matter. This conference was attended by appellee Cornish, Homer Rader, President of Lotus Southwest, Miss Joni Reid, office manager and bookkeeper for Precision Motors, and a Mr. Harrington, also an employee of Precision Motors. We reproduce the testimony of Cornish:

"A. Well, when we got back, I had a kind of a four-way conference with Mr. Rader and Mr. Harrington, who was with Precision at that time, and with another female employee of Precision Motors, whose name I don't know.

"Q. Well, is Rader the Homer Rader that has been mentioned here that was with Lotus?

"A. Yes, sir.

"Q. And what was the outcome of the conference?

"A. Well, Homer said that *he personally would see that a new engine was installed in the car,* and he elaborated on this a bit. He said he didn't mean just a new engine block, but a complete new engine, you know, being carburetor and accessory parts, would be substituted in my car for my engine." (Emphasis ours.)

\* \* \* \* \* \*

"Q. And your testimony is that *it was Homer Rader, who told you that they would put in for you a brand new engine?*

"A. Yes, sir." (Emphasis ours.)

Edward R. Tucker, Secretary-Treasurer and General Manager of Lotus Southwest, testified that he went to West Texas to see about a Lotus car which had been in a wreck. Lotus Southwest purchased the wrecked car. The body and frame of this car, according to Tucker, had been damaged, but the engine was undamaged. The car had been driven only 746 miles. Lotus Southwest had the car brought back to Dallas. It was the engine from this car which replaced the burned out motor in the Cornish car. Lotus Southwest kept the engine taken from the Cornish car. The replacement engine was owned and furnished by Lotus Southwest, not by Precision Motors.

The deal with Cornish to replace the burned out motor with another motor was handled by Homer Rader of Lotus Southwest.

About a week after the deal between Rader and Cornish was made the replacement engine was installed without charge to appellee Cornish. Lotus Southwest and Precision Motors shared the expense of installing the engine.

## OPINION

Appellant Browning, doing business as Precision Motors, bases his first, second, fourth, fifth, sixth and eighth points in substance on his contention that there was no evidence to support the jury's answer to Special Issue No. 10.

■ We agree with appellant. The jury's answer to Special Issue No. 10 found that William W. Browning, or some agent acting for him represented to J. V. Cornish at the time of the replacing of the engine that the replacement engine was a new one. We find no evidence that Browning, or any agent of his, or any other person represented to Cornish as a past or present existing fact that the replacement engine which was being installed in the car was a new engine.

Cornish relies on his own testimony to support the jury's answer to Special Issue No. 10, but even his own testimony does not support the jury's answer. His testimony is that it was a statement by Homer Rader upon which he relied. An analysis of Cornish's testimony discloses that:

1. Neither appellant Browning, nor any of his employees made the alleged false representation.

2. It was Homer Rader, President of Lotus Southwest, who stated that Cornish would receive a new engine. (This was about a week before the replacement was installed.)

3. Rader's statement was a promise looking to the future—it was not a misrepresentation as to a past or present existing fact.

4. Rader's statement did not undertake to bind Precision Motors. He said that he *personally* would see that a new engine was installed in the car.

We find no evidence that Browning authorized Rader to act as his agent in making the promise. And there is no pleading or proof either of apparent authority or of ratification.

■ Since Rader's statement was in the nature of a promise of an act to be performed in the future (not a misrepresentation of a past or present existing fact) it was not a fraudulent misrepresentation unless it was proved that at the time he made the promise Rader did not intend to perform it. The burden was on Cornish to prove such intent. Mere failure to perform a promise is not of itself evidence of intent not to perform. Such failure might under some circumstances serve as a basis for a suit for a breach of contract, but in the absence of intent not to perform it does not constitute fraud. Medina v. Sherrod, 391 S.W.2d 66 (Tex.Civ.App., 1965, no writ hist.); Billy Baker Mobile Homes, Inc. v. Foster, 390 S.W.2d 385, 387 (Tex.Civ.App., 1965, no writ hist.); Mason v. Mid-Continent Supply Co., 374 S.W.2d 922, 928 (Tex.Civ.App., 1964, ref. n. r. e.); Reynolds v. Steves, 356 S.W.2d 200 (Tex.Civ.App., 1962, no writ hist.); Rapid Transit Ry. Co. v. Smith, 98 Tex. 553, 86 S.W. 322, 323; Swink v. City of Dallas, 36 S.W.2d 222, 227 (Comm.App. holdings approved); 25 Tex.Jur.2d 682–687; 37 C.J.S. Fraud § 116, pp. 440–441. We find no evidence in the record that Rader did not intend to perform his promise.

In his brief on appeal appellee says that Browning's employees, Reid and Harrington, were present at the conference and

heard Rader make the statement in question, therefore it was their duty to speak out; and that by their silence they made their employer Browning a party to a fraudulent misrepresentation. In support of this view appellee cites us to the holding in Bucyrus-Erie Co., et al. v. Smith, 168 S.W.2d 896 (Tex.Civ.App., 1943, no writ hist.), in which case there was a dissenting opinion.

We do not consider the above cited case in point here because the fact situations are not analogous. Bucyrus-Erie was a venue case. It involved a misrepresentation of a past and present existing fact. Among other differences it did not, as in the instant case, involve a situation where the speaker made a promise that he would personally see to it that a certain thing would be done in the future. Appellant's first, second, fourth, fifth, sixth, seventh and eighth points are sustained.

■ In his third point appellant complains because no issue was submitted with regard to any agent of Browning's acting within the scope of his employment in representing that the replacement engine was a new one. In his twelfth point he complains because appellee did not plead or prove the proper measure of damages and no special issue was submitted based on the proper measure of damages. Appellant's thirteenth point is also based on the alleged erroneous measure of damages. In his objections and exceptions to the court's charge appellant did not object on the grounds mentioned in the above points on appeal. The question of the improper submission of issues because based on the wrong measure of damages was not preserved for our review. Employment Advisors, Inc. v. Sparks, 368 S.W.2d 199 (Tex. Sup., 1963). Appellant's third, twelfth and thirteenth points are overruled.

Appellant's ninth point is that the evidence was insufficient to support the jury's answer to Special Issue No. 10—that is, that the answer was contrary to the overwhelming weight and preponderance of the

evidence. We have held that there was no evidence to support the jury's answer. We hold that whatever evidence there may have been, if there was any, was insufficient to support the jury's answer. The ninth point will be sustained.

Appellant's tenth, eleventh, fourteenth and fifteenth points charge error in overruling his motion for judgment *non obstante veredicto* because there was no evidence to support the jury's answers to Special Issues Nos. 11 through 16. The sixteenth point charges there was insufficient evidence to sustain said answers. All of these issues were conditioned on an affirmative answer to Special Issue No. 10. Since we have held that there was no evidence to support the jury's answer to Special Issue No. 10 it follows that there was no evidence to support the jury's answers to Issues Nos. 11 through 16. Points ten, eleven, fourteen, fifteen and sixteen are sustained.

■ In his seventeenth point appellant says that it was error to overrule his special exception to appellee's general pleading of $600 damages, being the cost of repairs to the engine made in New York. The costs were not itemized. The exception should have been sustained. The evidence adduced in support of the costs was a statement, not itemized, in a deposition of a New York automobile mechanic made from memory. It included several items which were not shown to have any connection with defects in the replacement engine. Appellee admitted that he had been in an accident with the car in Pittsburgh, Pennsylvania just prior to having these repairs made in New York. Moreover, the mechanic, who was appellee's witness, frankly admitted that the labor charges were excessive. The seventeenth point is sustained.

In his eighteenth and nineteenth points appellant says that it was error for the court to permit appellee to file his Fourth Trial Amendment whereby he increased his claim for damage from $600 to a sum

in excess of $2,000. For the first time appellee pleaded (1) that he had spent $900 instead of $600 for repairs on the automobile; and (2) that he had expended $508 in monthly payments on the automobile after the engine was replaced; and (3) had lost the value of the Morgan automobile which he had traded in when he bought the Lotus; and (4) had repairs done at other places in Fort Worth, Pennsylvania, New York and Dallas; and (5) had lost the use of his car for two months while it was in the shop in New York—all of such items and expenses resulting from the representation that the second engine placed in the car was new and all to appellee's damage in excess of $2,000.

The jury verdict was returned November 16, 1965; the Fourth Trial Amendment according to the district clerk's record, was filed more than three weeks later on December 10, 1965. Leave to file the pleading according to the judge's notation was granted about six weeks later on December 30, 1965.

Rules 66 and 67, Vernon's Texas Rules of Civil Procedure, provide for trial amendments and for amendments to conform to issues tried without objection. The latter rule provides that such amendments may be filed with leave of the court upon motion *"any time up to the submission of the case to the Court or jury."* (Emphasis ours.)

Appellee has not pointed out to us any evidence in the record that he had spent $900 instead of $600 for repairs, or the cost of repairs done in Fort Worth and other places in Pennsylvania, New York and Dallas, or that he had lost the use of the car for two months while it was in the repair shop in New York, or the value of such loss of use. There is evidence that before having the car repaired in New York Cornish had driven the car more than 8,000 miles and had himself had an accident in the car while driving it in Pittsburgh, Pennsylvania.

A New York mechanic testified by deposition that the repair bill in New York was $600, but he did not undertake to itemize the costs. He stated frankly that the labor charges were excessive. His company had repaired the bumper, the interior door panel and other parts of the car which are not shown to have any connection with the fact that the replacement engine was not new. Furthermore, most of the repairs on the car over a period of a month and a half in Texas were made by Precision Motors without any charge or expense whatever to Cornish. And on at least one occasion Precision Motors had furnished Cornish with an automobile to drive while the Lotus was being repaired and had even furnished him with free gasoline tickets.

The Fourth Trial Amendment cannot be justified on the ground that it served to make the pleadings conform to the evidence for we do not find evidence to support the additional items of damage alleged for the first time in the Fourth Trial Amendment. Appellant had excepted to appellee's original pleading of $600 damage in an effort to obtain an itemization of the alleged damages, but his exception had been overruled.

Although a trial court has broad discretionary powers in the matter of permitting a trial amendment to be filed, we think it was error to do so under the circumstances of this case, especially since the amendment was filed after the return of the jury verdict. Tillery v. Tillery, 304 S.W.2d 156 (Tex.Civ.App., 1957, no writ hist.); Ragsdale v. Lindsey, 254 S.W.2d 843 (Tex.Civ.App., 1952, ref. n. r. e.). Appellant's eighteenth and nineteenth points are sustained.

Because we find no evidence to support the jury's findings of fraud on the part of appellant William W. Browning, Jr. we reverse the judgment of the trial court and here render judgment that appellee take nothing by his suit.

Reversed and rendered.