Warren Terry YATES, and Janet Yates, Plaintiffs-Appellees,

v.

TINDALL & SON PONTIAC, Defendant-Appellant.

No. 75–1128.

United States Court of Appeals, Fifth Circuit.

May 10, 1976.

---

294

Terence A. Willis, San Antonio, Tex., for defendant-appellant.

Dan L. Carabin, San Antonio, Tex., for plaintiffs-appellees.

Before DYER and CLARK, Circuit Judges, and KRAFT,* District Judge.

KRAFT, District Judge:

Tindall & Son Pontiac (Tindall) appeals from a judgment, with attorney's fees, awarded Warren Terry Yates and Janet Yates (Yates) after a non-jury trial. Yates' action, stemming from their purchase of a used automobile on May 9, 1973, claimed violation of 15 U.S.C. §§ 1988 and 1989,[1] as well as common law fraud, by Tindall. The appeal asserts that certain pivotal findings of fact by the court below were erroneous. We reverse.

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

1. The Motor Vehicle Information and Cost Savings Act.

The vehicle in question, then new, had first been sold by Tindall to one Raul Flores in September, 1972. It was twice damaged and repaired while in Flores' possession. When Flores was imprisoned on February 22, 1973, his relatives, the Ochoas, took possession. They remained in possession until April 4, 1973 when General Motors Acceptance Corporation (G.M.A.C.) repossessed the vehicle and sold it to Tindall. At some undefined time during the period of Ochoas' possession Mr. Ochoa observed the odometer reading to be 14,000 miles.

Simultaneously with the sale to Tindall, G.M.A.C. delivered to Tindall an odometer mileage statement, representing that the vehicle's mileage was 4,180. Eight days later one Ray Martinez of Motors Insurance Corporation prepared a proof of loss, relating to the damage suffered by the vehicle in the second collision, and noted thereon the odometer reading as 4,191 miles. On May 9, 1973 the Yates purchased the vehicle and were given an odometer disclosure form stating the mileage as 4,121 miles, though the following day, when the vehicle was brought back by the Yates for some minor adjustments, the odometer reading was recorded as 4,495 miles.

The trial court found that ". . . when the . . . automobile came again into the possession of the defendant, Tindall & Son Pontiac after it had been repossessed . . . the odometer was at least 14,000 miles which was a greater number of miles than the odometer mileage disclosure statement indicated was on the car when sold to the plaintiffs on May 9, 1973 and a greater number of miles than actually appeared on the odometer May the 9th, 1973."[2] That finding is ambiguous. If it means that the odometer *reading* was at least 14,000 miles when G.M.A.C. delivered the vehicle to Tindall, it is contrary to the evidence. If it means that the vehicle's *actual* mileage was at least 14,000 miles when G.M.A.C. delivered it to Tindall, it is a permissible, but

2. Finding of Fact # 4.

incomplete, finding under the evidence, in that it omits to find either the actual odometer reading when Tindall received it from G.M.A.C. or, if that were not proven, that the reading according to the odometer mileage statement contemporaneously given to Tindall by G.M.A.C. was 4,180 miles.

15 U.S.C. § 1988 provides:

(a) Not later than 90 days after October 20, 1972, the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

.    .    .    .    .

(b) It shall be a violation of this section for any transferor to violate any rules under this section or to knowingly give a false statement to a transferee in making any disclosure required by such rules.

The operative rules [3] adopted by the Secretary provide, in relevant part, "(a) Before executing any transfer of ownership document, each transferor of a motor vehicle shall furnish to the transferee a written statement signed by the transferor, containing the following information:

(1) The odometer reading at the time of transfer; (c) .  .  . In addition to the information provided under paragraph (a) of this section, if the transferor knows that the odometer reading differs from the number of miles the vehicle has actually traveled, and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the actual mileage is unknown."

█ Yates' complaint in this action was that Tindall violated § 1988(a)(2) by failing to disclose that the actual mileage of the vehicle was unknown. The trial court found that Tindall ".  .  . knew that the actual mileage on the vehicle was unknown or was different from the number of miles the vehicle had actually traveled" (sic).[4]

Our careful examination of the record discloses no evidence to support the finding that Tindall knew that the actual mileage of the vehicle was unknown. The uncontradicted evidence was that G.M.A.C. furnished Tindall an odometer disclosure statement representing the mileage to be 4,180. There is no evidence to prove that the odometer then read differently or that Tindall knew or had reason to know that G.M.A.C.'s disclosure statement was false. Accordingly, the finding that Tindall knew that the actual mileage on the vehicle was unknown is clearly erroneous. Absent that erroneous finding Yates' claim under the statute fails.

█ Yates' second claim, founded on common law fraud, cannot be sustained, because proof of damage under the applicable standard was lacking. The court below found, as the evidence indicated, that "the difference between the *price of a new car and the*  .  .  . automobile purchased by the plaintiffs would have been $500.00." (emphasis supplied).[5]

The proper measure of damage was the difference between the price the Yates paid Tindall and the fair market value of that used vehicle as one which had had more than seven months of use, had actual mileage of at least 14,000 miles, rather than 4,180 miles, and had been involved in two collisions entailing the repairs which had been made, or, in short, the difference between what the Yates paid and the fair market value of that which they actually received. *Quad Drilling Corporation v. Lawrence,* (5th cir. 1967) 380 F.2d 3; *George v. Hesse,* 100 Tex. 44, 93 S.W. 107; *Texarkana Motor Co. v. Brashears,* Tex.Civ. App., 37 S.W.2d 773; *Morriss-Buick Co. v. Pondrom,* 131 Tex. 98, 113 S.W.2d 889; *Bil-*

3.   49 C.F.R. § 580.4.

4.   *Finding of Fact 13.*

5.   Finding of Fact 15.

*ly Baker Mobile Homes, Inc. v. Foster*, Tex. Civ.App., 390 S.W.2d 385.

The judgment of the court below is reversed and the record remanded with directions to vacate the judgment in favor of the plaintiffs below and to enter judgment for the defendant below.