BURK ROYALTY COMPANY and Kenneth Swetnam, Appellants,

v.

Sally K. WALLS, Individually and as Next Friend and Natural Guardian of Jeffery Paul Walls, Jr., Appellee.

No. 18253.

Court of Civil Appeals of Texas, Fort Worth.

March 13, 1980.

Rehearing Denied April 10, 1980.

Stan Carter, Wichita Falls, for appellants.

J. Michael Smith, Gilmer, for appellee.

## OPINION

MASSEY, Chief Justice.

On or about November 8, 1974 Jeffery Paul Walls, hereinafter referred to as the deceased, was the husband of Sally K. Walls, and father of one child, Jeffery Paul Walls, Jr. On said date he was employed by Burk Royalty Company, whose District Superintendent was Kenneth Swetnam. He was working on what is known as a well pulling operation on a drilling site in Rusk County. During the course of this operation there occurred a fire, when from the well head a pocket of gas escaped out of a joint of tubing held in place preparatory to intended "swabbing" of the fluid therefrom. It was the pocket of gas which caught fire, and it blazed as a flare for approximately one minute before going out of its own accord.

At the time of the fire the deceased was working on a "board" in the "mast" about 15 feet above the derrick floor. At the "board" he was secured by a safety belt to prevent or minimize injury which might result from a fall. When the gas blazed as a flare from the tubing at the well head it caught the deceased as in a torch. Though he was observed to have attempted to free himself from the safety belt he was not successful. He was still held by that belt when he was brought down over an hour later.

There was residue from the tubing containing oil—a "wet joint"—which had sprayed upon the deceased immediately before the erupting gas caught fire. It was as a result of the ignition of the gas, coupled with the ignition of flammable liquid sprayed on him, that he burned so that he died.

Though the deceased was a covered employee under the Texas Workers' Compensation Law, Tex.Rev.Civ.Stat.Ann., art. 8306 et seq., and by reason of that fact his widow and minor child entitled to and collecting the death benefits prescribed thereby, such beneficiaries were entitled to and did bring suit for common law exemplary damages under Section 5 of that article, entitled "Exemplary damages". See also Tex.Rev.Civ.Stat.Ann., art. 4671 "Cause of Action" et seq., Title 77, "Injuries Resulting

in Death", and the articles thereunder. Suit was brought as though it was one for actual as well as exemplary damages, with the necessary facts shown to the court that judgment, if obtained, would be for exemplary damages only.

By its verdict the jury found: actual damages of $175,000.00 to the widow of the deceased; actual damages of $250,000.00 to the surviving child of the deceased; and $150,000.00 as exemplary damages which should be awarded against Burk Royalty Company and Kenneth Swetnam. Judgment of the court was for $150,000.00 plus interest and costs.

On the liability feature the case was submitted by the inquiry which read: "Do you find from a preponderance of the evidence that on the occasion in question, Kenneth Swetnam, failed to follow approved safety practices for pulling wet tubing?"

In answer to such question the jury returned its affirmative answer "Yes", followed by findings that such failure constituted negligence and a proximate cause of the "occurrence in question." The issue was general in nature but "tracked" the negligence alleged by the petition on which the case proceeded to trial. There were no exceptions taken to that petition.

There were objections and exceptions taken to the special issue quoted. Therein every matter of the complaint assumed the "occasion in question" to have been the occurrence of the fire. What we desire to indicate is that the objections presumed the proper inquiry to have relation to the occasion for the fire, rather than to the failure to attempt to extinguish the fire after it had become ignited. A question such as failure to extinguish a fire would not usually be the event proper to be considered as the "occurrence in question." In any event there was no clarifying instruction given the jury.

The circumstances have caused some concern for we deem the judgment on liability for exemplary damages to be supported by the evidence if the failure to extinguish the fire, the failure to attempt to do so, or the failure to provide the means by which that might have been attempted—and, perhaps accomplished—be deemed the subject of inquiry and answer by the jury in its verdict. We would not deem the judgment supported if the "occasion" made the subject of inquiry was the occurrence of the fire and nothing more.

As an aid: we are convinced that it may be negligence, even gross negligence, to fail to extinguish a fire—or attempt so to do—depending upon the circumstances. Furthermore, such negligence might also exist because of the failure to provide the means by which the fire might have been extinguished if proper inference could be drawn that but for the failure to provide such means there would have been action which would have resulted in its extinguishment. By the evidence in this case the jury was warranted to find negligence and proximate cause because of the failure to provide such means because it was entitled to infer from circumstances proved that if the means to extinguish the fire had been available the crew members working with the deceased would have used them successfully—and in time to prevent his injuries from becoming severe enough to cause death.

On trial the only evidence of approved safety practices were those embodied in the Burk Royalty Company Safety Policy as applied to which Swetnam had the duty of institution and supervision. Most of these were embodied in a set of written rules, listing 20 paragraphs, made up principally of directions for workmen participating in the actions and duties of employment for Burk Royalty Company to avoid injury and/or to minimize the deleterious effects of injuries which might occur. The written rules were introduced in evidence. We take occasion to copy from these rules the following:

"13. While operating a pulling unit or a workover unit utilizing a derrick man. The driller will insure that

he is wearing a quick release safety belt and that a geronimo line or quick escape mechanism is installed prior to the first trip.

"14. All production rigs will be equipped with two (2) twenty pound dry chemical extinguishers, or equivalent, in good working order. While operating, these extinguishers will be placed in opposite directions within ten feet of the well head."

Others, not copied, though a part of the written rules, would not have relation to the matter with which we believe we should restrict our concern. That matter was the situation after the fire was existent as opposed to the situation existent when the fire began.

This is so because we hold that there was no negligence of the defendants which amounted to proximate cause of the ignition of the escaping gas. Even as applied to Rule No. 13 above, in its provisions relative to the "geronimo line" or quick escape mechanism, do we likewise hold there not to have been raised for the jury any negligence of the defendants which could have amounted to proximate cause of the deceased's fatal injuries. There having been no escape mechanism furnished the deceased it is a near certainty that the defendants were negligent in that respect; yet such negligence could not have amounted to a proximate cause because the deceased was never able to extricate himself from his safety belt.

To revert to what has already been indicated: that the only negligence which could have amounted to proximate cause of the fatal injuries in this case was failure by Burk Royalty Company and Kenneth Swetnam to have available at prescribed positions the two (2) fire extinguishers prescribed by paragraph No. 14 of the company safety rules. It was indisputably established on trial that there was such failure on the part of the defendants. Both were charged either with having actual knowl-

edge of the failure or that they were obliged to have known of it had there been exercise of ordinary care. In either event they were negligent and that negligence was a proximate cause.

We take occasion at this point in the opinion to state that the above discussed failure relative to fire extinguishers might be found not only to have constituted simple negligence, but gross negligence as that entire want of care which would entitle the jury to believe that the omission to provide there was the result of conscious indifference to the welfare of person or persons to be affected by it. *Missouri Pac. Ry. Co. v. Shuford,* 72 Tex. 165, 10 S.W. 408 (1888); *Sheffield Division, Armco Steel Corporation v. Jones,* 376 S.W.2d 825 (Tex.1964).

Of course we can understand the dissatisfaction of Burk Royalty and Swetnam with the special issue which merely inquired whether they failed to follow approved safety practices for pulling wet tubing. A complaint is that the special issue did not confine the jury to consider only these safety practices produced before the jury as evidence: that therefore the jury was free to consider practices not proved as approved safety practices, and even permitted the jury to invent their own. We think it not to be doubted that the inquiry was whether there was failure to follow their own approved safety practices in having the Burk employees engage in operations without having provided two (2) twenty pound dry chemical extinguishers, or equivalent, in good working order, placed in opposite directions within ten feet of the well head. Whatever it might have been which the plaintiffs deemed the evidence to have raised as something within the safety rules which was not followed or was violated, and furthermore deemed by them to have raised as a negligent act of commission or omission on the part of the defendants amounting to a proximate cause of "the event" (deemed by them to have resulted) was desired to be known by defendants. They wanted to know exactly in what particular

they might be found guilty, and, because of such guilt, liable in damages. Ability to know this was denied by the manner of submission; for by the verdict they might know only that it was one or more of the acts or one or more of the omissions to act raised as an issue by the evidence, along with the issue of proximate cause.

Prior to the revision effective September 1, 1973 of Tex.R.Civ.P. 277, "Special Issues" the manner of submission adopted in this case might have been improper as too global. By reason of the amendment it was even made permissible for the court, for good cause subject to review, to submit a case on a general charge. It is also permissible for the court, in the exercise of its discretion, to submit issues broadly in negligence cases as well as other cases and where this is done the rule provides that it shall not be objectionable that a question is general or includes a combination of elements or issues. By reason of the 1973 amendment we hold the special issue in question, and those conditionally submitted thereunder, not to be subject to the objections made. We therefore overrule the points of error presented in complaint of the action of the trial court in the manner by which these issues were submitted. 11 St. Mary's L.J. 1 (1979), the article entitled "The State Of The Special Verdict—1979" by Associate Justice Jack Pope with William G. Lowerre; *Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 255 (Tex.1974).

Furthermore, the issue was not subject to the complaint that the jury was permitted freedom to engage in a roving mission to find and consider what might be approved safety practices. The jury was instructed by the charge that in arriving at their answers to the special issues they were to consider only the evidence presented to them on trial. Only the approved safety practices of Burk Royalty Company were before the jury and the jury is presumed to have obeyed the court's instructions.

A group of points are presented contending there to have existed jury misconduct of such nature as to vitiate the verdict so as to require new trial. We have examined the points and reviewed the testimony elicited from the jurors brought for the hearing on the motion for new trial before the trial court prior to denying any new trial. We have tested the evidence in the inquiry about (1) overt acts constituting jury misconduct, (2) materiality thereof as applied thereto, if there was misconduct, and (3) in the event there was any material misconduct by the jury, whether it amounted to such as was reasonably calculated to cause and probably did cause the jury to return a verdict other than that which it did return. *Bradley v. Texas & P. Ry. Co.*, 1 S.W.2d 861 (Tex.Comm.App.1928); *Lantex Construction Company v. Lejsal*, 315 S.W.2d 177 (Tex.Civ.App.—Waco 1958, writ ref'd n. r. e.); and Tex.R.Civ.P. 434, the Texas Harmless Error rule. From the examination we conclude there to have been no material misconduct by the jury, and if any there was that the complainants failed to discharge their burden to establish that degree of harm to them which would require that we reverse the judgment.

We close with consideration of the complaint because after verdict was returned by the jury, but before judgment, the court permitted the plaintiffs to file amendment in remedy of deficiency in pleadings upon which the case went to trial and so as to provide support for the trial court's judgment by the jury's finding of $150,000.00 as exemplary damages. At time the case was submitted to the jury the pleadings would have supported an award of exemplary damages to and including, but not exceeding the sum of $100,000.00. The theory upon which the trial court granted leave to amend the pleadings could only have been by Tex.R.Civ.P. 67, "Amendments to Conform to Issues Tried Without Objection".

Rule 67 presently reads:

"When *issues not raised* by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised

in the pleadings. *In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court . . . at any time up to the submission of the case to the Court or jury, but failure so to amend shall not affect the result of the trial of these issues . . . .*" (Emphasis supplied).

Prior to amendment effective September 1, 1941 the rule contained the same provisions, in general, but instead of the limitation upon time to file the amendment as *up to the submission of the case*, it provided authority for the court to permit amendment *at any time, even after judgment.*

▆ In the return of a verdict on damages, the jury is not confined to the "top dollar" alleged in the plaintiff's pleadings; but the trial court, in its rendition of judgment upon the verdict and the pleadings is restricted to such "top dollar" so alleged. Only in the event it be permissible that there be an amendment of such "top dollar" of the pleadings after the jury had returned its verdict could the amendment in this case be deemed to have stated a figure to match that returned by the jury as exemplary damages. If the late amendment be authorized by law, the court would therein have been supplied the power to render judgment for the amount of damages found by the jury, and the proper test on appeal would be whether there had been abuse of discretion in permitting the amendment.

▆ Obviously the exemplary damage issue itself was raised by the pleadings and the evidence and was properly submitted. However the "extent" of the issue, as raised by the pleadings, was the "top dollar" alleged therein at the time the case was submitted. The defendant was not injured by the jury finding returned in excess of that plead by plaintiffs; rather was the defendant injured by the admission of the amendment thereafter tendered because that permitted and authorized an increase in the penalty to be imposed by judgment of the court if rendered on a jury's verdict which could be said to have been supported by the pleadings as so amended.

Apparently, not actually certain, is that the defendants were not afforded opportunity to oppose motion for leave to file the amendment. In any event it appears that all were aware that such a motion, had there been one, would be opposed by the defendants and certainly not waived. Even before the amendment was permitted there was complaint in defendants' motion for judgment notwithstanding the verdict because of the return of the jury's answer finding $150,000.00 as exemplary damages, on ground that the pleadings could have supported no more than $100,000.00.

By what is here written we do not mean to imply that a trial amendment permitted after a jury has returned its verdict but before judgment can never be proper; certainly there might be propriety thereof in some circumstances. However, we do not believe that there could be among them any instance where an excess in exemplary damages be supported by the allowance of an untimely amendment which would increase the *ad damnum* plead, at least, when its allowance be not accompanied by the opposite party's waiver of right to complain.

We are convinced, however, and do here hold that the situation in this case is controlled by the provision of Rule 67 in that the amount of the exemplary damages alleged as of the time the case was submitted to the jury is to be considered as the "issue raised", and that any amount in excess thereof—as found by the jury in this case—constituted neither a like "issue raised" nor one to be deemed as an issue which was tried by express or implied consent.

We recognize that in so holding we differ from other courts in that in comparison to some we do not go so far as to hold that an amendment similar to that here considered may not be permitted to be filed after return of a jury verdict. At the same time

we hold to the contrary of what has been either expressly held or is found as *dicta* in other decisions in approval of similar amendments. See *Precision Motors v. Cornish*, 413 S.W.2d 752 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.); *Arnold D. Kamen & Co. v. Young*, 466 S.W.2d 381, 387 (Tex. Civ.App.—Dallas 1971, writ ref'd n. r. e.); *Am. P. & V. v. J. D. Campisi's Italian Restaurant*, 533 S.W.2d 380, 386 (Tex.Civ. App.—Tyler 1975, writ ref'd n. r. e.); and *Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751, 758, et seq. (Tex.Civ.App.—San Antonio 1977, no writ).

We hold the judgment excessive by $50,000.00.

■ Independently, we have taken notice that the judgment was one which was jointly rendered in favor of the widow and the minor child of the deceased, but with no apportionment made of the $150,000.00 awarded to them. There may not be an apportionment made by this court relative to what we have held to be the correct judgment amount, $100,000.00, for this power resides in the trial court.

Accordingly, we reform the judgment so as to reduce the same to the amount of $100,000.00, and we remand the cause to the trial court for further proceedings not inconsistent with our opinion that there might be the determination of what part of the $100,000.00 award, approved by our judgment, shall be the entitlement of Sally K. Walls, and what part shall be the entitlement of Jeffery Paul Walls, Jr.

Costs of the appeal are adjudged to be assessed as follows: one third against plaintiffs/appellees, and two thirds against defendant/appellants.