**Janie Marie HOPFER, Appellant,**

v.

**COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, et al., Appellees.**

**No. 5473.**

Court of Civil Appeals of Texas, Eastland.

Sept. 25, 1980.

Rehearing Denied Oct. 23, 1980.

Richard D. Coan, Coan & Terrill, P. C., Stephenville, for appellant.

Robert J. Glasgow, Stephenville, for appellees.

RALEIGH BROWN, Justice.

Janie Marie Hopfer, individually, and as Administratrix of the Estate of David Alan Hopfer, sued Commercial Insurance Company of Newark, New Jersey and Continental Insurance Company to recover the face value of a policy of insurance insuring the life of her husband, David Alan Hopfer, who died on September 29, 1976, as a result of a gunshot wound. The policy of insurance insured Hopfer "against loss of life . . . resulting directly and independent of all other causes from bodily injury caused by accident occurring while the policy is in force." The agreement excluded losses caused by or resulting from "intentional self-inflicted injuries, suicide or attempt threat, while sane or insane." Defendants pled the suicide exclusion. Judgment was rendered for defendants after the jury found that the death of David A. Hopfer "did result from suicide." Janie Marie Hopfer appeals. We affirm.

In her first two points of error, Mrs. Hopfer urges that the trial court erred in overruling her motion for an instructed verdict because the appellees failed to rebut the presumption against suicide and also failed to establish that the death of David Hopfer was the result of suicide. We overrule both contentions.

As to the latter contention, the court in *Sherman v. Provident American Insurance Company*, 421 S.W.2d 652 (Tex.1967), considering who had the burden of proof where the insurer pleads an exclusion as a defense when a plaintiff is seeking to recover on an insurance policy said:

> On the point of conflict as to the burden of proof, the Court of Civil Appeals in the case at bar has correctly decided that the burden of proof was on the plaintiffs to negative the exclusions and limitations contained in the policy and pleaded as a defense by defendant's answer. *International Travelers Ass'n v. Marshall*, 131 Tex. 258, 114 S.W.2d 851 (1938) and *Travelers Ins. Co. v. Harris*, 212 S.W. 933 (Tex.Com.App., 1919).

See also *Reliable Life Insurance Company v. Torres*, 509 S.W.2d 409 (Tex.Civ.App. Austin 1974, writ ref'd n.r.e.).

In *Praetorian Mutual Life Insurance v. Humphrys*, 484 S.W.2d 413 (Tex.Civ.App. Fort Worth 1972, writ ref'd n.r.e.), the court said:

> On a policy such as this the beneficiary, in order to recover the accidental death benefits, must establish and obtain a factual finding of the negative of the company's allegations that death was due to a risk falling within the exceptions of the policy of insurance.

■ The trial court, therefore, properly overruled Mrs. Hopfer's motion for an instructed verdict urging that appellees had the burden of proving suicide.

■ Mrs. Hopfer's argument that appellees failed to introduce sufficient evidence to rebut the presumption against suicide that prevails in Texas is also overruled.

Ray, Texas Law of Evidence § 105 (Texas Practice 3rd Ed. 1980) says:

The Texas courts recognize a presumption against suicide. It assumes importance in actions against an insurer to recover on a policy limiting liability to death by accidental means. The presumption places upon the party against whom it operates the burden of producing evidence that deceased took his own life. However once the insurer has produced evidence, even though circumstantial, from which the jury could reasonably find that deceased committed suicide the presumption is rebutted and is not to be treated as evidence.

The court in *Prudential Insurance Company of America v. Krayer*, 366 S.W.2d 779 (Tex.1963) discussing the presumption against suicide said:

> There is a legal presumption against suicide; this has been called a "true presumption" which falls or "disappears" when rebutted; that is to say, this presumption once rebutted does not have weight as evidence. *Combined American Insurance Co. v. Blanton*, Tex., 163 Tex. 225, 353 S.W.2d 847.

David Hopfer and wife, Janie, moved to Stephenville in March 1976. He was employed as an area extension horticulturist with the Texas A & M University System. After his arrival, Hopfer was described as a very verbose person, very outspoken, extremely friendly, never met a stranger, a happy person, constantly talking and going on. Within the thirty day period prior to his death, he was described as having become withdrawn to the point that he did not talk like he did before. He was a much quieter, more subdued person. He was described as being in a state of depression. In the period prior to his death Mr. and Mrs. Hopfer had a child "stillborn." His brother was involuntarily confined to the mental ward of a private hospital for psychiatric evaluation.

On September 30, 1977, Hopfer's body was found sitting by a tree. A Remington 16 gauge shotgun with one expended shell was found beside the body. The upper part of Hopfer's head had been "lifted back" by the shot.

T. A. Lee responding to questions propounded by plaintiff testified that in his opinion Hopfer committed suicide.

Sue Webb, dispatcher for the Stephenville Police Department, testified that Mrs. Hopfer called and was very upset about her husband being missing; that he had never done this before and that the last time she saw him he was very depressed.

James Rucker, insurance agent for State Farm Automobile Insurance Life Company, assisted Mrs. Hopfer in filling out a claim form and a proof of loss form for life insurance. He testified Mrs. Hopfer told him Hopfer committed suicide. He filled out the claim report with such information, and she signed it.

We hold that such proof effectively rebutted the presumption against suicide.

■ We next overrule Mrs. Hopfer's point of error urging that the trial court improperly placed the burden on her to prove the death of David Hopfer did not result from intentional, self-inflicted injury, suicide.

The trial court submitted:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the death of David Alan Hopfer did not result directly or indirectly from suicide as the term "suicide" is defined hereinabove?

ANSWER: "It did not result from suicide" or "It did result from suicide." The jury answered this issue, "It did result from suicide."

In *Praetorian Mutual Life Insurance Company v. Humphrys*, supra, the court considered this matter and said:

Since the plaintiffs in the instant case were required by law to establish such negative, it follows that they must carry the burden on the special issue by which the jury settles the controversy. . . .

In three points of error, Mrs. Hopfer contends that the trial court erred in failing to exclude the testimony of James Rucker. She urges that the calling of such witness (1) violates discovery rules, (2) left her without the ability to qualify the jurors on voir dire examination as to the witness, and (3) introduced evidence of another insurance claim.

Prior to trial, responding to written interrogatories propounded by Mrs. Hopfer, appellees listed 24 persons that they would probably call as witnesses and additionally stated "other witnesses will be made known to plaintiff as they come to the knowledge of this defendant." On Tuesday, December 4, 1979, after the jury had been sworn and seated the day before, appellees made known their desire to add Rucker to their witness list. Mrs. Hopfer objected.

The trial court stated it would rule whether he could testify when the witness was called.

During cross–examination Mrs. Hopfer testified:

Q After your husband's death, did you ever tell anyone he died as a result of suicide?

A I did not tell anyone that, no.

Subsequently, Rucker was called as a witness and testified outside the presence of the jury:

Q After the death of David Alan Hopfer, did you visit with his wife, Janie Hopfer, for the purpose of filling out a claim form or a Proof of Loss form, or some other instruments, for life insurance?

A Yes, I did.

Q And where did you visit with her?

A At her home.

Q When you went to her home, would you tell the Judge the specific purpose you went there for?

A We have a claimant statement that has to be sent in to the insurance company that the beneficiary signs, and I went there to get this statement filled out to send to the company.

Q Would you tell the Judge generally what kind of information is contained on that claimant statement?

A Well, they have such things as the cause of death and who was the last person possibly to see him, or if they had a doctor to see him, things of that nature, surrounding the death.

Q Did you ask Mrs. Hopfer about the cause of death of David Alan Hopfer when you completed that claimant's statement?

A Yes, I did.

Q What did she relate to you as the cause of death?

A That it was suicide.

After this testimony, the court ruled it would admit the testimony of Rucker and overruled the objections of Mrs. Hopfer. Rucker then testified before the jury:

Q Are you familiar with the fact that her husband died in Erath County on September the 30th of 1976?

A Yes, sir.

Q After his death did you go to her house to visit with her surrounding the circumstances of his death?

A Yes, I did.

Q Did you go over there to fill out any kind of a form?

A Yes.

Q What kind of a form did you go over there to fill out?

A A claimant statement.

MR. COAN: We will object to what the purpose of him being there was.

THE COURT: Overruled.

Q (By Mr. Glasgow) And would you identify for the jury what a claimant statement is?

A It is a form that the insurance company has the beneficiary to fill out and sign to send to the company to tell what happened about the death and what the proceeds are.

Q What kind of information is contained upon that claimant's statement form?

A Well, what the cause of the death was, and who the last attending person was to the person, and things of that nature.

Q And did you fill out that form in conjunction with Mrs. Janie Hopfer?

A Yes, I did.

Q When you got to the section that calls for cause of death, did you ask Mrs. Janie Hopfer the cause of her husband's death?

A Yes, I did.

Q What did she tell you?

A She indicated suicide.

Q Now, did you go ahead and complete that form with the cause of death "suicide" contained in it?

A Yes, I did.

Q Did she sign that form?

A Yes, she did.

Q Did she sign that form in your presence?

A Yes.

Q And did she file that form with the insurance company?

A Yes.

■ Such testimony was properly admissible as impeachment testimony against Mrs. Hopfer. As stated by this court in *Industrial Broadcasting Company KIKK v. Broadcasting Equipment Sales Company,* 543 S.W.2d 674 (Tex.Civ.App.--Eastland 1976, no writ):

A party may be impeached by showing statements made by him which are contradictory or inconsistent with his testimony given in the pending case. Texas Law of Evidence, McCormick and Ray, par. 689, page 534.

■ Mrs. Hopfer's brief concedes that "The testimony offered by Mr. Rucker was in direct conflict with testimony that was offered by the plaintiff Janie Hopfer, and was certainly harmful to her case." However, since the testimony was properly admissible, no error is shown. As stated by the court in *Fulmer v. Thompson,* 573 S.W.2d 256 (Tex.Civ.App. Tyler 1978, writ ref'd n.r.e.):

To obtain a reversal of a judgment based upon an error in the trial court an appellant has a two-pronged burden.

First, he must show there was error in fact, and secondly, that such error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.; *Bristol–Myers Co. v. Gonzales*, 548 S.W.2d 416, 429 (Tex.Civ.App.–Corpus Christi 1976), reversed on other grounds, 561 S.W.2d 801; *Consolidated Underwriters v. Whittaker*, 413 S.W.2d 709 (Tex.Civ.App.–Tyler 1967, writ ref'd n.r.e.).

Mrs. Hopfer has failed in the first instance.

We have considered and overrule all points of error.

The judgment is affirmed.