**SERVICE LLOYDS INSURANCE COMPANY, Appellant,**

v.

**Richard GREENHALGH, Appellee.**

**No. 3–87–076–CV.**

Court of Appeals of Texas, Austin.

May 24, 1989.

Rehearing Denied June 21, 1989.

Robert D. Stokes, Flahive, Ogden & Latson, Austin, for appellant.

Ray Chester, Pluymen & Bayer, Austin, for appellee.

Before SHANNON, C.J., and GAMMAGE and ABOUSSIEN, JJ.

GAMMAGE, Justice.

Service Lloyds Insurance Company (Service Lloyds) appeals from a judgment rendered in favor of Richard Greenhalgh for actual damages, punitive damages and attorney's fees. We will modify and, as modified, affirm the judgment.

Greenhalgh is an automobile mechanic who injured his back on the job in December 1984. Service Lloyds is the workers' compensation carrier which insured the automobile dealership where Greenhalgh worked at the time of his injury. During the pendency of Greenhalgh's workers' compensation claim, Service Lloyds filed a notice of controversion with the Industrial Accident Board formally denying all liability for medical and weekly indemnity benefits. Greenhalgh's workers' compensation claim against Service Lloyds was settled at a pre-hearing conference at the Industrial Accident Board in August 1985. None of Greenhalgh's medical expenses were paid, however, until after Greenhalgh filed this bad faith insurance practice lawsuit against Service Lloyds on December 5, 1985.

The trial court submitted fifteen special issues to the jury. Special issue one consisted of five subparts. The first three subparts asked the jury if Service Lloyds 1) failed to confirm medical benefits when no bona fide dispute existed as to the liability of Service Lloyds, 2) failed to timely pay for specific medical treatments, and 3) entered into a compromise and settlement agreement with the intention of not paying all past medical expenses called for in the agreement. The jury found Service Lloyds committed all of these acts. The court then instructed the jury that Service Lloyds did not pay weekly workers compensation indemnity benefits to Greenhalgh before August 12, 1985; and hired and retained Insurers Services of Texas to investigate Greenhalgh's employment and other activities.

The court also submitted five theories of recovery based on any one or more of the acts or omissions found by the jury in the first special issue: breach of the duty of good faith and fair dealing, unfair insurance practices, negligence, gross negligence and intentional infliction of emotional distress.

The jury found that all of the acts in special issue one were committed knowingly and maliciously, that these acts all constituted elements of all the theories of recovery, and that such acts were the proximate cause of actual mental anguish damages to Greenhalgh. The jury also found in response to a separate special issue that Service Lloyds represented in the settlement agreement that medical expenses would be paid. It is undisputed that, even though the Insurance Board approved the settlement, no medical expenses were paid until this suit was filed.

The jury awarded Greenhalgh $8000 in actual damages, $128,000 in punitive damages, and attorney's fees. The court entered judgment on the verdict without stating the specific theory or acts it relied upon. Service Lloyds therefore assumes the appellate burden of establishing that the judgment cannot be supported by any of the five theories submitted, based on any one or combination of the acts found by the jury in response to the special issues. *McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex.1964). Service Lloyds must not only show error, but also show that such error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Hopfer v. Commercial Ins. Co. of Newark, New Jersey*, 606 S.W.2d 354, 359 (Tex.Civ.App.1980, writ ref'd n.r.e.); Tex.R.App.P.Ann. 81 (Pamp. 1989).

Service Lloyds brings twenty-four convoluted and confusingly briefed points of error, asserting that *some* of the acts in special issue number one do not give rise to recoverable damages because there is no duty of good faith and fair dealing between a workers' compensation carrier and a covered employee. In points of error 2, 3, 5, 6, and 20 through 23, it attacks the judgment

by asserting that, because this suit arises out of the investigation, adjustment, negotiation and settlement of a workers' compensation claim, any duties owed the parties are created and measured exclusively by the Workers' Compensation Act; and that, because the Act does not include a duty of good faith to a claimant, the trial court erred in rendering judgment based on this duty. Tex.Rev.Civ.Stat.Ann. arts. 8306, *et seq.* (1967 and Supp.1989). Specifically, Service Lloyds claims the failure to confirm medical benefits, the failure to timely pay for medical treatment, the failure to pay workers' compensation benefits and the hiring of an investigator cannot give rise to a common law cause of action. Service Lloyds also contends that the Industrial Accident Board is the administrative agency with exclusive, or alternatively, primary jurisdiction over complaints against a carrier, and since no complaint was ever leveled against Service Lloyds before this suit, the district court had no subject matter jurisdiction over this bad faith claim.

While this case was pending on appeal, the Texas Supreme Court held that a common law duty of good faith and fair dealing exists between workers' compensation carriers and covered employees. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988). This cause of action lies in tort and exists apart from the Industrial Accident Board's administrative power to determine an employee's grievance for an unreasonable failure to pay benefits for compensable injuries.

> A workers' compensation claimant who asserts that a carrier has breached the duty of good faith and fair dealing by refusing to pay or delaying payment of a claim must establish (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits.

> The second element balances the right of an insurer to reject an invalid claim and duty of the carrier to investigate and pay compensable claims. This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or delay payment, or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay. Under the test, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim. Carriers that breach the duty of good faith and fair dealing, however, will be subject to liability for their tortious conduct.

*Id.* at 213 (emphasis in original) (citations omitted). Furthermore, the exclusivity provision of the Act does not apply if the claim is not based on a job-related injury. Tex.Rev.Civ.Stat. art. 8306, § 3. "A claimant may recover when he shows that the carrier's breach of the duty of good faith and fair dealing or the carrier's intentional act is separate from the compensation claim and produced an independent injury." *Aranda*, 748 S.W.2d at 214.

■ The supreme court did not, however, address whether the duty applied retroactively to cases not yet final. Generally, a decision of a supreme court applies retroactively, but considerations of fairness and policy occasionally preclude such application. *Linkletter v. Walker*, 381 U.S. 618, 626–629, 85 S.Ct. 1731, 1736–38, 14 L.Ed.2d 601 (1965); *Sanchez v. Schindler*, 651 S.W.2d 249, 254 (Tex.1983). "Resolution of the issue turns primarily on the extent of public reliance on the former rule and the ability to foresee a coming change in the law." *Sanchez*, 651 S.W.2d at 254. *But see: Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984); *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439 (Tex. 1984).

Reliance on a former rule is not an issue here because the Supreme Court, before *Aranda*, never directly addressed whether a workers' compensation carrier owed a duty of good faith and fair dealing to a

covered employee. *Aranda,* however, looked to basic contract and insurance law and determined that such a duty does exist. The Court then reviewed the Act itself to determine if the penalty provisions of the Act preclude the imposition of separate tort duties. Tex.Rev.Civ.Stats.Ann. arts. 8306, § 18a, 8307, § 5a (Supp.1989). The Court concluded the wording of the Act does not preclude such duties and the penalty provisions providing direct benefits to claimants do not afford relief, or alternatively, afford inadequate relief for a breach of the duty of good faith and fair dealing by refusing to pay benefits for a compensable claim. Furthermore, the Court interpreted the exclusivity provision of the Act to prevent only those actions based on injuries sustained in the course of employment. *Reed Tool Co. v. Copelin,* 610 S.W.2d 736, 739 (Tex.1980); Tex.Rev.Civ.Stat.Ann. art. 8306, § 3 (Supp.1989). *See also Izaguirre v. Texas Employers' Ins. Ass'n,* 749 S.W.2d 550, 554 (Tex.App.1988, no writ). Finally, because this Court perceives no public policy or fairness consideration which favors shielding a party from liability for bad faith acts, we will apply *Aranda* retroactively to this case.

■■■ Because the knowing and malicious failure to timely pay for medical treatment and benefits supports a claim for a breach of the duty of good faith and fair dealing which the Act does not exclude, we overrule points of error 2, 3, and 20 through 23. Because these acts, in addition to the knowing and malicious hiring of an investigator and failure to confirm medical benefits, can support the tort of intentional infliction of emotional distress, which the Act does not exclude, points of error 5 and 6 are overruled.

■■ In its seventh and eighth points of error, Service Lloyds complains that the trial court erred in submitting special issue number 13, which requested the amount of actual damages, without requesting separate damages under common law and statutory legal theories. Service Lloyds asserts that the damage issues and accompanying instructions should be drawn in a manner to permit the jury to make separate awards, and to permit the trial court to ascertain the area of damage to which the award relates. It cites *Lucas v. Nesbitt,* 653 S.W.2d 883 (Tex.App.1983, writ ref'd n.r.e.) for the propositions that the plaintiff has the burden to obtain these separate jury findings and that the defendant need not object if the issue is not properly submitted. Service Lloyds fails to acknowledge *Frank B. Hall & Co. v. Beach, Inc.,* 733 S.W.2d 251, 262–264 (Tex.App.1987, writ ref'd n.r.e.), a later opinion from the same court of appeals that wrote *Nesbitt.* In *Beach,* the court confined *Nesbitt* to the facts in that case, holding that a single issue asking the jury to award damages caused by the conduct of the defendant must be objected to or such error is waived. The court stated "the defendant could have foreseen that any damages awarded by the jury would necessarily be comprised of damages for all causes of action upon which it was found liable." *Beach,* 733 S.W.2d at 262–264. Service Lloyds failed to object to the damages issue as submitted; it has therefore waived any error. Tex.R.Civ.P.Ann. 274 (Supp.1989).

In its first point of error, Service Lloyds complains that, because there was some evidence to support such issues, the trial court erred in refusing to submit its requested special issues relating to contributory negligence.

■ The jury found that Service Lloyds' acts constituting breach of the duty of good faith and fair dealing were done with knowledge and malice. The jury also found that Service Lloyds intentionally inflicted emotional distress on Greenhalgh. Both of these common law theories are intentional torts independently supporting the trial court's judgment. Because contributory negligence applies only to actions to recover damages under a negligence theory, the failure to include special issues on contributory negligence, if error, was harmless. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980); *Ryan Mortg. Investors v. Fleming–Wood,* 650 S.W.2d 928, 934 (Tex.App.1983, writ ref'd n.r.e.); Tex.Civ.Prac. & Rem.Code Ann. § 33.001 (1986). Moreover, the rule

that contributory negligence does not apply to claims based on intentional torts is now codified at Tex.Civ.Prac. & Rem.Code Ann. § 33.002(a) (Supp.1989). Service Lloyds' first point of error is overruled.

■ Service Lloyds asserts by its fourth point of error that there is no evidence or, alternatively, insufficient evidence to support the jury finding that Service Lloyds failed to confirm medical benefits. In deciding a no-evidence point, we may consider only that evidence which, viewed in its most favorable light, supports the fact findings and we must reject all contrary evidence. *Bounds v. Caudle*, 560 S.W.2d 925 (Tex.1977). When reviewing a factual sufficiency point, we must consider all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 362 (1960).

Service Lloyds' insurance adjuster's notes read as follows:

> 4–16–85—St. David's Hospital called. Claimant was admitted on 4/15 by Dr. Philip Leonard to rule out herniated disc. Advised I was unaware of this dr. providing treatment so therefore I am not able to authorizations (sic) treatment or guarantee payment. Last known medical was with chiropractor. I see notes where attorney wanted Claimant seen by Dr. Leonard, but we have not received any communication from him.

The adjuster, who was terminated shortly after this incident, testified that he failed to confirm Greenhalgh's medical benefits. This failure occurred 13 days after an investigator sent Service Lloyds a report stating that "this appears to be a compensable claim" and recommending that Service Lloyds "honor any past medical bills caused as a result of this accident." Furthermore, Greenhalgh testified that he was initially refused admission to the hospital, that he had a difficult time on discharge because the hospital wanted assurance of payment from him, and that he finally signed a 90–day note so he could leave. Service Lloyds had an affirmative duty to investigate the situation and determine its duty to confirm benefits. Because we find there is sufficient evidence to support the jury finding that Service Lloyds failed to confirm medical benefits, its fourth point of error is overruled.

■ In its tenth point of error, Service Lloyds asserts the trial court erred in rendering judgment for Greenhalgh because there is no evidence or, alternatively, insufficient evidence to support actual damages for mental anguish. The instruction for this issue states:

> In considering the foregoing issue, you are instructed that mental anguish requires a high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include any of these. It includes a mental sensation of pain resulting from such painful emotions as severe disappointment, indignation, wounded pride, shame, despair, or humiliation.

Service Lloyds claims there is no evidence to support the finding that Greenhalgh sustained more than a mere disappointment, anger, resentment or embarrassment. In the alternative, Service Lloyds asserts, without citation of authority, that any evidence of mental anguish was the result of privileged conduct on behalf of the carrier and, therefore, could not support such damages.

Greenhalgh's testimony included instances of extreme embarrassment when the hospital detained him upon release from the hospital. He stated that he was forced to borrow money from a friend to go to the doctor when he was so sick he was "in fear of his life." He found that borrowing money was particularly upsetting because he had always been able to pay his own way. He also had to borrow money from his sister. He testified that when he learned that an investigator had been asking his 77 year-old landlady and close personal friend questions about him, he felt like he had "done something wrong, like I was a spy or

something." It further upset him that his landlady was disturbed by the situation. Greenhalgh then testified that while working for an old friend, Dave Geddes, he returned to work after lunch one day to find that he was fired. Geddes told him that someone from the workers' compensation board arrived at the shop, told Geddes that he was breaking the law by giving Greenhalgh a job and that they were both going to jail. Greenhalgh had to call his lawyers and have them explain to Geddes that they were not breaking the law. Geddes testified that Greenhalgh ranted and raved, talked to his lawyer the rest of the afternoon and kept talking about it to others. The "workman's compensation man" turned out to be an investigator hired by Service Lloyds.

Greenhalgh testified that because Service Lloyds did not pay his medical expenses the situation caused him to

... lose sleep, you know, worrying how am I going to dig up this kind of money? What am I going to do? I didn't know what the heck I was going to do. I'd never been that far in the hole before. And receiving threatening letters, it gets to you after a while. It doesn't take long.

His sister testified that Greenhalgh was embarrassed, had low self-esteem and felt like a failure.

We find there is sufficient evidence to support $8000 actual mental anguish damages. Service Lloyds' tenth point of error is overruled.

■ In its sixteenth point of error Service Lloyds asserts the trial court erred in denying its motion to exclude three witnesses listed in Greenhalgh's answers to interrogatories filed twelve days before trial.

Determination of good cause is within the discretion of the trial court and may be set aside only if clear abuse is shown. *Morrow v. HEB, Inc.,* 714 S.W.2d 297 (Tex. 1986); *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 442 (Tex.1984). To find abuse of discretion, the reviewing court must determine that the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operations, Inc.,* 701 S.W.2d 238, 241 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

Service Lloyds neither cites authority nor argues the lack of good cause or abuse of discretion under this point and, consequently, waives any error. *Essex Crane Rental Corp. v. Striland Const. Co., Inc.,* 753 S.W.2d 751, 756 (Tex.App.1988, writ denied); *Benham v. Benham,* 726 S.W.2d 618 (Tex. App.1987, writ ref'd n.r.e.); Tex.R.App. P.Ann. 74(f) (Pamp.1989). Even had Service Lloyds correctly briefed this point, we fail to find an abuse of discretion. The statement of facts for the hearing on the motion to exclude reveals that these witnesses were apparently inadvertently excluded by Service Lloyds in its initial response to Greenhalgh's motion for production, and subsequently not produced when Greenhalgh notified Service Lloyds of the omission. On Greenhalgh's third request Service Lloyds produced the names, and the same day the names were included in Greenhalgh's supplemental answers to interrogatories. Point of error 16 is overruled.

■ In points of error 17 through 19, Service Lloyds claims the trial court erred in allowing the three witnesses to testify because their testimony was not relevant to this case. A review of the beginning testimony of these three witnesses fails to show any objection by Service Lloyds as to relevance. It has therefore preserved nothing for appeal. *Lemons v. EMW Manufacturing Co.,* 747 S.W.2d 372, 373 (Tex.1988); Tex.R.App.P.Ann. 52(a) (Pamp.1989). Furthermore, Service Lloyds waived any error because it failed to carry its burden by citing page numbers or the portion of the record where the alleged errors in testimony occurred. *Most Worshipful Prince Hall v. Jackson,* 732 S.W.2d 407, 412 (Tex. App.1987, writ ref'd n.r.e.); Tex.R.App.P. Ann. 74(f) (Pamp.1989). Points of error 17 through 19 are overruled.

■ In its ninth point of error, Service Lloyds asserts the trial court erred in rendering judgment for both common law punitive damages and statutory attorney's

fees based on the same bad acts. It argues this was a double recovery. We disagree that the punitive damages and attorney's fees were awarded based on the *same* bad acts.

Texas Ins.Code Ann. art. 21.21, § 16 (Supp.1989) declares that a cause of action for treble actual damages may be brought by:

> Any person who has been injured by another's engaging in [1] any of the practices declared in Section 4 of this Article or [2] in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance or [3] *in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice....*

(emphasis added). A plaintiff who prevails under this section is entitled to actual damages, costs and attorney's fees. *See also Aetna Cas. & Sur. Co. v. Marshall*, 724 S.W.2d 770, 772 (Tex.1987). The jury found that Service Lloyds knowingly represented to Greenhalgh that the compromise and settlement agreement conferred or involved rights, remedies or obligations which it did not have or involve; a practice prohibited by Tex.Bus. & Com.Code Ann. art. 17.46(b)(12) (1987). The jury also found that this was the producing cause of mental anguish damages to Greenhalgh. Greenhalgh is, therefore, entitled to treble actual damages, costs and attorney's fees. *International Armament Corp. v. King*, 686 S.W.2d 595, 599 (Tex.1985).

The common law punitive damages were based on acts included in special issue number one, previously discussed. These acts were different than the acts supporting the award for attorney's fees. Because the Insurance Code violation was based on a different act and submitted in a special issue separate from the acts supporting recovery under the common law theories, Greenhalgh was entitled to both treble and punitive damages. To receive both, however, one must separate the actual damages arising under the statutory and com-

mon law theories. The plaintiff could then receive treble damages based on the actual damages resulting from the Insurance Code violation, and punitive damages based on the actual damages resulting from the common law actions. *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 932–933 (Tex.App.1982, writ ref'd n.r.e.). By not segregating the actual damages, Greenhalgh was required to make an election. He elected punitive damages instead of treble damages, but was still entitled to attorney's fees. Because he recovered attorney's fees only once, there was no double recovery. Service Lloyds' ninth point of error is overruled.

 In its thirteenth and fourteenth points of error, Service Lloyds asserts the trial court erred in awarding attorney's fees because there is no evidence or, alternatively, insufficient evidence allocating what portion of damages related solely to services provided while pursuing the statutory cause of action.

Attorney's fees are awarded to a prevailing plaintiff under Art. 21.21, § 16(b)(1) of the Insurance Code. In cases involving more than one claim, the general rule is that attorney's fees can be awarded only for the necessary legal services rendered in connection with the statutory claim for which recovery is authorized. *Gray v. Curtis*, 544 S.W.2d 816, 819–820 (Tex.Civ. App.1976, writ ref'd n.r.e.). Unless there is proof upon which to base a judgment limiting attorney's fees to only those attributable to the statutorily recoverable claims, no attorney's fees will be allowed. *Crow v. Central Soya Co., Inc.*, 651 S.W.2d 392, 396 (Tex.App.1983, writ ref'd n.r.e.). Exceptions to this rule occur when the multiple claims asserted rely upon proof of the same facts for recovery. *Flint & Assoc. v. Intercon. Pipe & Steel*, 739 S.W.2d 622, 624–25 (Tex.App.1987, writ den.).

The facts surrounding the compromise and settlement agreement used to establish the Insurance Code violation were the same as those used to establish that Service Lloyds 1) failed to pay timely for Greenhalgh's medical treatment and 2) entered into this agreement with the intention of

not paying all past medical expenses called for in the agreement. These latter two acts support common law theories of recovery discussed earlier in this opinion. Because the statutory and common law claims required proof of the same facts, Service Lloyd's thirteenth and fourteenth points of error are overruled.

■■■ In its fifteenth point of error, Service Lloyds asserts the special issue 1(c) finding—that the carrier entered into a compromise settlement agreement with the intention of not paying all past medical expenses called for in the agreement—is in fatal conflict with the special issue 10(a) finding—that the carrier represented that the compromise and settlement agreement dated August 12, 1985, conferred or involved rights, remedies, or obligations which it did not have or involve. We disagree.

Jury findings are not fatally conflicting "if there is any reasonable basis upon which they may be reconciled." *Luna v. Southern Pacific Transp. Co.*, 724 S.W.2d 383, 384 (Tex.1987). The agreement included a provision that

> Carrier will pay or has paid for all accrued hospital and medical expenses resulting from said injury except ~~expenses incurred for treatment of viral pneumonia, if unpaid~~. No exceptions.

Service Lloyds' representative Judy McKerracher, Greenhalgh and Greenhalgh's attorney initialled the crossed out portion of this provision. McKerracher testified that she wrote the agreement with the intention of excluding the costs for the pneumonia, but that Greenhalgh would not agree to this exclusion, crossed out the clause and wrote "no exceptions." She also testified that, though she agreed to the change and knew why it was made, she did not believe she was agreeing to pay the costs for the pneumonia because part of the clause stated "from said injury."

Testimony regarding the agreement-signing shows that the agreement *purported* to include these costs. Special issue 1(a) can be understood as a finding that Service Lloyds entered into the compromise settlement agreement with the intention of not paying all past medical expenses *purportedly* called for in the agreement. The jury also found that McKerracher *represented* that the agreement included these costs when, in fact, she *believed* the wording of the agreement did not include these costs. Because these issues are not in fatal conflict, Service Lloyds' fifteenth point of error is overruled.

In its twelfth point of error, Service Lloyds asserts there is no evidence or, alternatively, insufficient evidence to support punitive damages; but argues only that its conduct was not actionable as a matter of law because there is no common law remedy available for its conduct. We overrule this point for the reasons stated in our disposition of points 2, 3, 5, 6, and 20 through 23.

Even had Service Lloyds properly argued sufficiency of the evidence, the evidence discussed under points of error 4, 10 and 15 is sufficient to show malicious and knowing actionable conduct by Service Lloyds which was the proximate cause of actual damages to Greenhalgh. *International Armament*, 686 S.W.2d at 597 The record also includes evidence of Service Lloyds' actionable conduct in connection with three other claimants, who are not parties to this suit, which supports punitive damages. Service Lloyds' twelfth point of error is overruled.

■■■ In its eleventh point of error, Service Lloyds asserts the trial court erred in granting Greenhalgh leave to file a post-verdict trial amendment increasing his punitive damage request from $100,000 to $128,000. We agree.

If the objecting party fails to show prejudice, it is within the trial judge's discretion to allow a trial amendment. Tex.R.Civ.P. Ann. 66 (1988). The party complaining of abuse of discretion in the trial court has the burden of showing such abuse. *Simon v. York Crane & Rigging Co., Inc.*, 739 S.W.2d 793, 795 (Tex.1987); Tex.R.App.P. Ann. 50(d) (Pamp.1989). To find an abuse of discretion, the reviewing court must determine that the trial court acted without reference to any guiding rules or principles. *Downer*, 701 S.W.2d at 241. *See also Landon v. Jean–Paul Budinger, Inc.,*

724 S.W.2d 931, 936 (Tex.App.1987, no writ). When a court allows a plaintiff to file a post-verdict amendment increasing punitive damages to meet the jury verdict, and then enters judgment on that verdict, the defendant is injured. *Burk Royalty Co. v. Walls,* 596 S.W.2d 932, 938–939 (Tex. Civ.App.1980), aff'd, 616 S.W.2d 911 (Tex. 1981). Absent waiver of this injury by failing to object or oppose the amendment, it is an abuse of discretion to grant leave to amend. *Winn–Dixie Texas, Inc., v. Buck,* 719 S.W.2d 251, 255 (Tex.App.1986, no writ); *Burk,* 596 S.W.2d at 938.

Greenhalgh originally requested unspecified punitive damages. In response, Service Lloyds filed a special exception. Greenhalgh responded to Service Lloyds' special exception by filing an amended trial pleading requesting $100,000 in punitive damages. When the jury returned a verdict for $128,000 in punitive damages, Greenhalgh filed a post-verdict trial amendment to reflect this amount. Service Lloyds objected to this amendment claiming prejudice because it relied on Greenhalgh's pleading in the preparation of its case and in its decisions regarding compromise and settlement.

We agree with the reasoning in *Burk* that, because a defendant receives notice of the upper limit of punitive damages only by way of pleadings, it is an abuse of discretion to allow a post-verdict trial amendment increasing punitive damages when proper objections are made. Service Lloyds' eleventh point of error is sustained.

In its twenty-fourth point of error, Service Lloyds asserts that the cumulative effect of the trial court's errors was reasonably calculated to cause and probably did cause rendition of an improper judgment. Because of the disposition of the other points of error, we need not address this point.

The judgment of the trial court is modified to award $100,000 in punitive damages, and, as modified, is affirmed.